**Donnie Ray McMORRIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 49115.**

Court of Criminal Appeals of Texas.

Dec. 18, 1974.

Ben H. Tompkins, Fort Worth, for appellant.

Tim Curry, Dist. Atty., T. J. Haire and William E. Burdock, Asst. Dist. Attys., Fort Worth, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for resisting arrest by exhibiting a firearm; the jury assessed punishment at imprisonment for four years. The appellant argues that Article 341(b), V.A.P.C., under which this prosecution was had is unconstitutional, that the evidence is insufficient to support the conviction, and that the prosecutor's jury argument was so harmful and prejudicial that it requires reversal of the judgment.

Article 341(b), V.A.P.C., which became effective September 1, 1969, and was repealed effective January 1, 1974, in pertinent part, reads as follows:

"A person who uses or exhibits a firearm in resisting any lawful arrest, apprehension, or investigation by a peace officer is guilty of a felony . . . ."[1]

The appellant argues that this statute provides no standards for determining whether an act is a criminal act and that a

---

[1]. Article 341(b), V.A.P.C. has been replaced by V.A.T.C. Penal Code, Sec. 38.03, which reads as follows:

"(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest or search of the actor or another by using force against the peace officer or another.

"(b) It is no defense to prosecution under this section that the arrest or search was unlawful.

"(c) Except as provided in Subsection (d) of this section, an offense under this section is a Class A misdemeanor.

"(d) An offense under this section is a felony of the third degree if the actor uses a deadly weapon to resist the arrest or search."

person of ordinary intelligence cannot determine from the wording of the statute what is prohibited. Further, he says that the terms ". . . exhibit, resisting, lawful arrest, apprehension, and investigation are subject to overly broad interpretation . . ." The appellant's attack upon the statute appears to be both that it is vague and that it is overbroad. We do not find this statute to be constitutionally void for either reason.

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Const. Co., 269 U.S. 385, 46 S. Ct. 126, 70 L.Ed. 322 (1925).

See also Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and

discriminatory application . . . ." Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed.2d 989 (1953), and if it encourages arbitrary and erratic arrests and convictions. Papachristou v. City of Jacksonville, supra; Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed.2d 1093 (1940); Herndon v. Lowrey, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed.2d 1066 (1937).

■ A clear and precise statute may nevertheless be overbroad if in its reach it prohibits constitutionally protected conduct. Grayned v. City of Rockford, supra.

In Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), a Kentucky statute was examined by the Supreme Court of the United States and held not to violate constitutional provisions. The wording of the statute is certainly no more precise than the one which the appellant asks us to review in this case. That statute in pertinent part reads as follows:

"(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . . . . .

"(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . ." Ky.Rev.Stat. § 437.-016(1)(f) (Cum.Supp.1968).

Mr. Justice White in the majority opinion said:

". . . The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practi-

cal difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited . . . "

and agreed with the opinion of the Kentucky court that citizens who desire to obey the statute there under attack would have no difficulty understanding it.

The meaning of the words used in Article 341(b), V.A.P.C. are well known and may be understood by a person of ordinary intelligence. They give fair notice of the acts prohibited. The statute does not threaten constitutionally protected conduct of this appellant or of others. It is not overbroad. See Colten v. Kentucky, supra; cf. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

We, like the Supreme Court in Colten v. Kentucky, supra, referring to the attack upon the Kentucky statute, find the attack upon this statute to be a "strained, near-frivolous contention." We hold Article 341(b), V.A.P.C. is not vague, is not overboard, and does not violate constitutional provisions.

■ We will now give consideration to the appellant's contention that the conviction is not supported by sufficient evidence. The indictment alleges that the appellant on or about the second day of February, 1973, unlawfully exhibited a shotgun in resisting a lawful arrest, apprehension, and investigation by a peace officer. A brief summary of the evidence follows. R. L. McGuire and D. M. Wright, Fort Worth police officers, while they were in uniform and on patrol at about 11:30 p. m. observed a disturbance caused by four men near a "beer joint" named Bill's Red Barn. While the officers were talking with these men gun shots were heard coming from inside of the building. Two white men having an "altercation" with a black man who was between them appeared in the doorway. The white men were the appellant and his brother. Officer McGuire ap-

proached the appellant who had a pistol in his hand. McGuire told the appellant three times to drop the pistol and leveled his own pistol at the appellant before the appellant handed the pistol to the officer. By this time Officer Wright was having considerable difficulty in subduing the appellant's brother who also had a pistol in his possession, and McGuire went to the aid of Wright. McGuire told the appellant to stay where he was standing. While the officers were attempting to effect the arrest of the appellant's brother and were placing handcuffs on him they heard the report of a shotgun. They looked up and saw the appellant standing in the doorway holding a shotgun at a forty-five degree angle after having fired over the officers. He then leveled the shotgun in their direction, and he uttered words which were not understandable to the officers. Someone then pulled the appellant back into the building. Another officer who had arrived on the scene recovered the shotgun and placed the appellant under arrest. Based on this evidence the jury could find that the appellant exhibited a shotgun to resist the arrest of his brother by the officers. We find this evidence sufficient to support the jury finding of guilt.

■ The appellant's third ground of error is based on the following portion of the prosecutor's argument:

"That is what we have policemen for. It is to try to cut down the fighting and try to cut down on the shooting, try to cut down on the killing, and that is what these men were doing. They were out there to make an investigation of that criminal offense. You wouldn't get me down there at that place at eleven thirty five at night with a cannon, but these men are brave enough to do it, so they do it, they come up to this hoodlum over here—

"MR. SHAW: Your Honor, I'm going to object to that.

"THE COURT: Sustained.

"MR. SHAW: And I ask that the jury be instructed not to consider it.

"THE COURT: The jury will not consider that—

"MR. SHAW: And I ask for a mistrial.

"THE COURT: Overruled."

While we do not necessarily condone the prosecutor's argument, we note that one definition of "hoodlum" is "a thug, ruffian, mobster; esp.: a small-time criminal whose crimes include acts of violence." Webster's Third New International Dictionary, Unabridged.

The record in this case shows that the appellant had been convicted of two prior felony offenses. The court promptly sustained the appellant's objection and instructed the jury to disregard the comment. The overruling of the motion for mistrial was proper under the circumstances.

The judgment is affirmed.

Opinion approved by the Court.