**Kenneth Alan YORKO, Appellant,**

v.

**The STATE OF Texas, Appellee.**

No. 470–84.

Court of Criminal Appeals of Texas, En Banc.

May 22, 1985.

Michael A. Maness, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Timothy G. Taft, & Vance Christopher, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

THOMAS G. DAVIS, Judge.

Appellant pled not guilty to a misdemeanor information charging possession with intent to sell an obscene device, namely a dildo. The trial court found appellant guilty and assessed three days in jail and a fine of $750.00. The Fourteenth Court of Appeals (Houston) affirmed the conviction, holding that Sections 43.21(a)(7) and 43.-23(c)(1) of the Penal Code do not violate the right of privacy guaranteed by the United States Constitution or deprive citizens of substantive due process under the Texas Constitution. *Yorko v. State,* 681 S.W.2d 633 (Tex.App.1984). We granted appellant's petition for discretionary review to examine the holdings.

The statutes at issue read as follows:
"43.21.  Definitions
" . . .
" 'Obscene device' means a device including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs."
"43.23.  Obscenity
" . . .
"(c) A person commits an offense if, knowing its content and character, he:
"(1) promotes[1] or possesses with intent to promote any ... obscene device; ..."

Appellant contends that these provisions, "on their face and as applied in the circumstances of this case, are unconstitutional under the due process clause of the Fourteenth Amendment to the Constitution of the United States because they violate the individual right of privacy."

We are unable to review the constitutionality of the statutes "as applied in the circumstances of this case" because the record contains no evidence of what those circumstances were. The record contains neither a statement of facts nor a written stipulation of evidence. Nor does appel-

---

1. "Promote" means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same. Sec. 43.21(a)(5), supra.

lant's brief analyze the application of the statutes to the facts of the case. The state of the record thus permits review of the facial constitutionality only.

Appellant takes care to deny that his challenge rests on the ground of vagueness or overbreadth. He does not dispute the holding of *Sewell v. State,* 238 Ga. 495, 233 S.E.2d 187 (1977), appeal dismissed for want of a substantial federal question, sub. nom. *Sewell v. Georgia,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978), which rejected a vagueness and overbreadth challenge to a Georgia statute virtually the same as the statute at issue here. Nor does appellant claim that the statutes deny him equal protection of the law. .

Appellant claims, rather, that the statutes violate the fundamental right of privacy announced in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and elaborated in subsequent cases, notably *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

In *Roe v. Wade,* supra, the Court wrote: "The Constitution does not explicitly mention any right of privacy. In a line of decisions, however, going back perhaps as far as *Union Pacific R. Co. v. Botsford,* 141 U.S. 250, 251 [11 S.Ct. 1000, 1001, 35 L.Ed. 734] (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution. In varying contexts, the Court or individual Justices have, indeed, found at least the roots of that right in the First Amendment, *Stanley v. Georgia,* 394 U.S. 557, 564 [89 S.Ct. 1243, 1247, 22 L.Ed.2d 542] (1969); in the Fourth and Fifth Amendments, *Terry v. Ohio,* 392 U.S. 1, 8–9 [88 S.Ct. 1868, 1872–1873, 20 L.Ed.2d 889] (1968), *Katz v. United States,* 389 U.S. 347, 350 [88 S.Ct. 507, 510, 19 L.Ed.2d 576] (1967), *Boyd v. United States,* 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746] (1886), *see Olmstead v. United States,* 277 U.S. 438, 478 [48 S.Ct. 564, 572, 72 L.Ed. 944] (1928) (Brandeis, J., dissenting); in the penumbras of the Bill of Rights, *Griswold v.*

*Connecticut,* 381 U.S. at 484–485 [85 S.Ct. at 1681–1682]; in the Ninth Amendment, *id.,* at 486 [85 S.Ct. at 1682] (Goldberg, J., concurring); or in the concept of liberty guaranteed by the first section of the Fourteenth Amendment, *see Meyer v. Nebraska,* 262 U.S. 390, 399 [43 S.Ct. 625, 626, 67 L.Ed. 1042] (1923). These decision make it clear that only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' *Palko v. Connecticut,* 302 U.S. 319, 325 [58 S.Ct. 149, 152, 82 L.Ed. 288] (1937), are included in this guarantee of personal privacy. They also make it clear that the right has some extension to activities relating to marriage, *Loving v. Virginia,* 388 U.S. 1, 12 [87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010] (1967); procreation, *Skinner v. Oklahoma,* 316 U.S. 535, 541–542 [62 S.Ct. 1110, 1113–1114, 86 L.Ed. 1655] (1942); contraception, *Eisenstadt v. Baird,* 405 U.S. [438] at 453–454 [92 S.Ct. [1029] at 1038–1039] [31 L.Ed.2d 349]; *id.,* at 460, 463–465 [92 S.Ct. at 1041, 1043–1044] (White, J., concurring in result); family relationships, *Prince v. Massachusetts,* 321 U.S. 158, 166 [64 S.Ct. 438, 442, 88 L.Ed. 645] (1944); and child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 535 [45 S.Ct. 571, 573, 69 L.Ed. 1070] (1925), *Meyer v. Nebraska, supra.*

"This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy...."

410 U.S. at 152–53, 93 S.Ct. at 726–27.

Appellant argues that:

"Clearly one significant element of the constitutional right of privacy is the individual's interest in making certain kinds of important decision." *Whalen v. Roe,* 429 U.S. 589, 599–600 [, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64, 73 (1977) ].

" . . .

"... [I]t is clear that the personal decisions recognized as within the right of privacy must meet at least two criteria. First, such decisions must be essentially personal in nature involving matters of primary concern either to the individual involved or to his immediate family. See, e.g., *Eisenstadt v. Baird,* [405 U.S. 438, at 453, 92 S.Ct. at 1038] (decision must be one 'fundamentally affecting a person'). Secondly, the decision must profoundly affect the individual's personal life and have little, if any, impact upon others or society in general." [citation omitted].

Appellant concludes that:

"Under the foregoing principles, it is clear beyond argument that the use, and by necessary implication the commercial distribution, of certain types of 'sexual devices' are constitutionally protected activities."

Thus the question is: Does the due process clause of the Fourteenth Amendment guarantee a citizen the right to stimulate his, her or another's genitals with an object designed or marketed as useful primarily for that purpose? Put another way, is there a right to stimulate human genital organs with an object designed or marketed as useful primarily for that purpose, such that the right is a "fundamental" one "implicit in the concept of ordered liberty"? *Roe v. Wade,* supra, quoting *Palko v. Connecticut.*

The statute does not criminalize the use of obscene devices, or the mere possession of such devices without the intent to promote them. Nevertheless, appellant argues that by inhibiting the citizen's ability to acquire obscene devices, the statute unconstitutionally burdens the citizen's fundamental right to possess and use them. Appellant relies on the line of cases holding that the right to decide whether to bear or beget a child is a fundamental right under the Fourteenth Amendment. The line began with the dissent in *Poe v. Ullman,* 367 U.S. 457, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting) and continued through *Griswold v. Connecticut,* supra, and *Eisenstadt v. Baird,* supra, to *Carey*

*v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

In *Carey* the Court announced the full import of the earlier cases in the line, as follows:

"Appellants argue that this Court has not accorded a 'right of access to contraceptives' the status of a fundamental aspect of personal liberty. They emphasize that *Griswold v. Connecticut,* struck down a state prohibition of the use of contraceptives, and so had no occasion to discuss laws 'regulating their manufacture of sale.' 381 U.S. at 485, 85 S.Ct. at 1682. *Eisenstadt v. Baird,* was decided under the Equal Protection Clause, holding that 'whatever the rights of the individual to access to contraceptives may be, the rights must be the same for the unmarried and the married alike.' 405 U.S., at 453, 92 S.Ct., at 1038. Thus appellants argue that neither case should be treated as reflecting upon the State's power to limit or prohibit distribution of contraceptives to any persons, married or unmarried. But see *id.,* at 463–464, 92 S.Ct., at 1043–1044 (White, J., concurring in result).

"The fatal fallacy in this argument is that it overlooks the underlying premise of those decisions that the Constitution protects 'the right of the individual ... to be free from unwarranted governmental intrusion into ... the decision whether to bear or beget a child.' *Id.,* at 453, 92 S.Ct., at 1038. *Griswold* did state that by 'forbidding the use of contraceptives rather than regulating their manufacture or sale,' the Connecticut statute there had a 'maximum destructive impact' on privacy rights. 381 U.S., at 485, 85 S.Ct., at 1682. This intrusion into 'the sacred precincts of marital bedrooms' made that statute particularly 'repulsive.' *Id.,* at 485–486, 85 S.Ct. at 1682. But subsequent decisions have made clear that the constitutional protection of individual autonomy in matters of childbearing is not dependent on that element. *Eisenstadt v. Baird,* holding that the protection is not limited to

married couples, characterized the protected right as the '*decision* whether to bear or beget a child.' 405 U.S., at 453, 92 S.Ct. at 1038 (emphasis added). Similarly, *Roe v. Wade,* held that the Constitution protects 'a woman's *decision* whether or not to terminate her pregnancy.' 410 U.S., at 153, 93 S.Ct., at 727 (emphasis added). See also *Whalen v. Roe, supra,* 429 U.S., at 599–600, 97 S.Ct., at 876–877, and n. 26. These decisions put *Griswold* in proper perspective. *Griswold* may no longer be read as holding only that a State may not prohibit a married couple's use of contraceptives. Read in light of its progeny, the teaching of *Griswold* is that the Constitution protects individual decisions in matters of childbearing from unjustified intrusion by the State.

"Restrictions on the distribution of contraceptives clearly burden the freedom to make such decision...."

Appellant analogizes from the contraception cases as follows:

"... [A]ny attempt by the State to criminalize the use or sale of condoms, diaphragms or similar birth control aids would clearly violate the constitutional right of privacy recognized in *Griswold,* [supra] and *Carey,* [supra]. Unless there is some exotic and heretofore unarticulated distinction to be drawn between sexual devices that stimulate and gratify and sexual devices that do not, the same principle of freedom of choice operable in *Griswold* and *Carey* with respect to a matter of peculiarly private concern likewise invalidates any attempt by the State to control an individual's private modes of sexual stimulation or gratification."

A similar argument—that a right to use or possess implies a right of access or acquisition—was repeatedly urged on the Supreme Court after its decision in *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). In that case police, authorized by warrant, searched Stanley's home for evidence of bookmaking. They found instead an obscene film. Georgia prosecuted Stanley for "knowingly hav[ing] possession of ... obscene matter." The Supreme Court invalidated the conviction, holding that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." The holding rests on both the First Amendment right of free speech and also "the [fundamental] right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy." *Stanley v. Georgia,* supra.

A theory developed that, because *Stanley* established the right to possess obscene material in the privacy of the home, there must be a correlative right to receive it, transport it, and distribute it. The Court has consistently rejected this reasoning. See *United States v. 12 200–Ft. Reels of Super 8mm. Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); *United States v. Reidel,* 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971); *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

These cases held that, despite *Stanley v. Georgia,* the government may constitutionally proscribe the mailing (*Reidel,* supra), importation (*12 200–Ft. Reels,* supra; *Thirty-Seven Photographs,* supra), and transportation on interstate carrier (*Orito,* supra) of obscene material. The holdings in *Reidel, Thirty-Seven Photographs,* and *Orito* "negate the idea that some zone of constitutionally protected privacy follows [obscene] material when it is moved outside the home area protected by *Stanley.*" *Orito,* supra; accord, *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

Moreover, the states may constitutionally proscribe the sale or commercial exhibition of obscene material. *Kaplan v. California,* 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); *Paris Adult Theatre I v. Slaton,* supra.

Thus the Court held in *Stanley* that there is a fundamental privacy right to

possession of obscene material in the home which the State may not infringe.[2] In subsequent cases, however, the Court made it clear that this homebound privacy right does not carry with it a right of *access* to obscene material. By contrast, the Court ultimately held in *Carey* that the right to decide whether to bear or beget a child may not be unnecessarily burdened by restrictions on *access* to contraceptives.

█ The question in the instant case then comes down to this: Are obscene devices like obscene material—which the State may deny access to—or like contraceptives—which citizens must be free to obtain?

The answer lies in the difference between the uses of obscene material and contraceptives. Contraceptives are used to implement the decision not to beget a child. Because the right to make this decision is protected by the Constitution, access to the means to implement it may not be unnecessarily burdened by the State.

Obscene material, by contrast, is used for sexual stimulation and gratification. "Obscene material is material which deals with sex in a manner appealing to prurient interest ... *I.e.*, material having a tendency to excite lustful thoughts." *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); accord, *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

Yet "In an unbroken series of cases extending over a long stretch of [the Supreme] Court's history, it has been accepted as a postulate that 'the primary requirements of decency may be enforced against obscene publications.'" *Paris Adult Theatre I v. Slaton,* supra, *quoting Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1975), *quoting Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed.2d 1357 (1931). Accordingly, legislatures may act on this postulate and restrain obscenity to protect *"the social interest in order and morality."* Roth v.

United States, supra, quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (emphasis in *Roth*); see also, *Paris Adult Theatre I v. Slaton,* supra.

Appellant maintains that "[obscene] devices are designed, purchased and used consensually only for the purpose of sexual stimulation and gratification." Thus obscene material and obscene devices are used for the same purpose. Appellant does not claim that obscene devices serve, like contraceptives, to implement the constitutionally protected decision not to beget a child.

The Penal Code sets out its objectives as follows:

"The general purposes of this code are to establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiedly and inexcusably causes or threatens harm to those individual or *public interests* for which state protection is appropriate."

Section 1.02, supra (emphasis added). The Penal Code's prohibitions against obscene devices are found in Title 9. "Offenses Against Public Order and Decency."

█ In the face of the Constitution's explicit protection of speech by the First Amendment, the states and the federal government may suppress traffic in obscene expression. We hold it is also appropriate for the State to act to protect the "social interest in order and morality" (*Roth,* supra) or "decency" (*Paris Adult Theatre I,* supra) by restraining traffic in non-communicative objects designed or marketed as useful primarily for the stimulation of human genital organs.

█ Moreover, we do not discern in the language of the Constitution or in the principles of the Supreme Court cases discussed above any fundamental right to use obscene devices. If there is such a right, however, we find that the exercise of that right is protected by the rule of *Stanley v. Georgia,* supra. By analogy with the cases

---

2. But see *Whalen v. Roe,* supra, 429 U.S. at 609, 97 S.Ct. at 881, restricting *Stanley* solely to its

First Amendment rationale (Stewart, J., concurring).

limiting *Stanley* and upholding the denial of access to obscene material outside the home, we hold that the State may criminalize promotion of and possession with intent to promote obscene devices.

Thus we distinguish between contraceptives and obscene devices. This distinction strikes us as no more "exotic," in appellant's words, than the distinction between protected and obscene expression. See *United States v. Gentile*, 211 F.Supp. 383 (D.Md.1962) (distinguishing dildoes from condoms in federal obscenity prosecution).

Appellant's second contention invokes Art. I, Sec. 19 of the Texas Constitution, which provides as follows:

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Appellant claims that the prohibition of obscene devices arbitrarily deprives him of a substantive economic right, the right to use and dispose of his property as he pleases, in violation of Art. I, Sec. 19.

Appellant claims:

"There is simply no justification, hypothetical or otherwise, for the legislation ... If the *possession* or *use* of the enumerated devices to stimulate or gratify sexual desire is not a crime (and is, indeed, a constitutionally protected right), by what muddled logic can the transfer of the device to the ultimate consumer be deemed a criminal offense? There is simply no articulable interest advanced by these laws other than to ineffectually assuage some purported community outrage directed against an intrinsically innocous [sic] piece of latex." [emphasis by appellant].

Appellant concludes that the statutes exceed the State's police power.

This Court's many decisions affirming obscenity convictions implicitly recognize and uphold the State's authority to ban obscenity under the police power. See also

*Paris Adult Theatre I v. Slaton*, supra: "[The Supreme] Court has consistently held that obscene material is not protected by the First Amendment as a limitation on the state police power by virtue of the Fourteenth Amendment."

We hold that the rationale justifying the State's exercise of the police power against obscene expression—that is, the protection of the social interest in order and morality—also justifies the State in criminalizing the promotion of objects designed or marketed as useful primarily for the stimulation of human genital organs. The statute does not violate Art. I, Sec. 19 of the Texas Constitution.

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

Whether an answer is correct may well depend on how the question is framed. From its perception of the issues, the majority's question is:

"Put another way, is there a right to stimulate human genital organs with an object designed or marketed as useful primarily for that purpose, such that the right is *a 'fundamental' one 'implicit in the concept of ordered liberty'*? Roe v. Wade, *supra, quoting* Palko v. Connecticut."[1]

In *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), the Supreme Court was deciding whether a statute permitting appeals in criminal cases to be taken by the State infringed the Fourteenth Amendment to the Constitution of the United States. *Id.*, U.S. at 320, S.Ct. at 149. In the course of coming to its conclusions that execution of the sentence against him "will not deprive appellant of his life without due process of law assured to him by the Fourteenth Amendment," *id.*, U.S. at 322, S.Ct. at 150, and that his conviction "is not in derogation of any privileges or immunities that belong to him as a citizen of the United States," *id.*, U.S. at

---

1. All emphasis is mine unless otherwise indicated.

328, S.Ct. at 153, the Supreme Court pointed to instances in which certain protections afforded by particular provisions of the Bill of Rights had been "incorporated" into the Fourteenth Amendment, and stated:

"In these and other situations immunities that are valid as against the federal government by force of the specific pledges of particular amendments have been found to be implicit in the concept of ordered liberty, and thus, through the Fourteenth Amendment, become valid as against the states."

*Id.*, U.S. at 324–325, S.Ct. at 151–152. Then in the next paragraph of the opinion there is mention of rights such as trial by jury and immunity from prosecution except upon indictment that "may have value and importance [but] are not of the very essence of a scheme of ordered liberty. To abolish them is not to violate a 'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' [Citations omitted.]" [2]

So when Justice Blackmun came to write the opinion of the Supreme Court in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), he sought to sustain a constitutional "right of personal privacy" by identifying decisions which had found one source or another of that right—"decisions mak[ing] it clear that only personal rights that can be deemed 'fundamental' *or* 'implicit in the concept of ordered liberty,' Palko v. Connecticut,* [supra] are included in this guarantee of personal privacy." He then catalogued several decisions showing

activities to which the right of privacy had been extended, and concluded:

"This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's general reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy."

*Id.,* 410 U.S. at 152, 93 S.Ct. at 727.[3]

Thus if one must be posed, the question is more properly framed as follows:

Whether *the constitutional right of personal privacy* is broad enough to encompass a person's decision to engage in private consensual sexual activity that includes stimulating human genital organs with an object designed to be primarily useful for that purpose?

If the answer is in the affirmative, then it follows from what the majority itself says is the "full import" of the "contraception cases" that "[r]estrictions of the distribution of [such objects] clearly burden the freedom to make such decisions." [4]

The answer given by the majority to its own question is derived from bits and pieces of opinions deciding First Amendment law pertaining to obscenity. Particularly favored is *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 37 L.Ed.2d 419 (1973). But *Roth* takes care to explain that "sex and obscenity are not synonymous," *id.,* U.S. at 487, S.Ct. at 1310.

**2.** As to right to trial by jury at least, the dicta was overruled in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**3.** Though Justice Blackmun utilized some terminology from *Palko,* his opinion of the Supreme Court makes plain that a right of privacy flows from the personal *"liberty"* interest that is protected by the Due Process Clause of the Fourteenth Amendment. Unlike *Palko, Roe v. Wade* is not concerned with privileges and immunities of citizens of the United States.

**4.** The majority excerpts a portion from part III of the opinion in *Carey v. Population Services International,* 431 U.S. 684, 97 S.Ct. 2010, 52

L.Ed.2d 675 (1977); the issue being addressed is validity of statutory restrictions on "distribution of nonprescription contraceptives." Immediately following what the majority quotes the opinion continues:

"A total prohibition against sales of contraceptives, for example, would intrude upon individual decisions in matters of procreation and contraception as harshly as a direct ban on their use. Indeed, in practice, a prohibition against all sales, since more easily and less offensively enforced, might have an even more devastating effect upon the freedom to choose contraception. Cf. *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)." *Id.,* U.S. at 688–689, S.Ct. at 2017.

Obscene material is condemned because of its "tendency to excite lustful *thoughts,*" *Roth ibid,* n. 20. Sex is sexually motivated *behavior* or phenomena—"a great and mysterious motive force in human life [that] has indisputably been a subject of absorbing interest to mankind through the ages," *Roth,* supra, U.S. at 487, S.Ct. at 1310.[5]

An unwritten but necessary premise in both abortion and contraception cases is that the constitutional personal right of privacy in such matters of personal liberty encompasses the threshold decision of whether to engage in sexual activity at all. When the first decision is to indulge in one of "the most intimate of human activities and relationships," *Carey,* supra, U.S. at 685, S.Ct. at 2016, naturally involving "the stimulation of human genital organs," whether to use contraceptives in order to prevent conception or, as the majority phrases it, "to implement the decision not to beget a child" is a secondary decision. That the Constitution provides the freedom to make the second decision necessarily means that the right to make the first one is protected.

> "If the right of privacy means anything, it is the right of the individual, *married or single,* to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child."

*Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1974). If such decisions are "among the most private and sensitive," *Carey,* supra, U.S. at 685, S.Ct. at 2016, the right of the individual, married or single, to be free from governmental intrusion into matters so fundamentally affecting a person as the decision whether to engage in private consensual sexual activity in the first instances must be practically invulnerable.

The majority need not look for Supreme Court decisions to find "any fundamental

right to use ... devices" that are said to be obscene. It is sufficient that there is a constitutional right to personal privacy broad enough to encompass a person's decision to engage in private consensual sexual activity in any manner or means not proscribed by law.

> "The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. * * * They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized man."

*Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (1928) (Brandeis, J., dissenting). They did not contemplate that exercise of the right could be infringed by notions of "the social interest in order and morality," that the Supreme Court found in *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), justified a State in proscribing and punishing uttering " 'fighting' words" to a City Marshall on a public sidewalk near the entrance to City Hall.

I respectfully dissent.

TEAGUE, Judge, dissenting.

After a bench trial, Kenneth Alan Yorko, appellant, was convicted of "possess[ing] with intent to sell an obscene device, namely, a dildo, knowing the content and character of the device." Punishment was assessed at three days' confinement in the Harris County jail and a $750 fine.

This offense is circumscribed by the provisions of V.T.C.A., Penal Code, Sections 43.21(a)(7) and 43.23(c)(1). The latter provides in part that a person commits an offense if, knowing its content and character, he possesses any obscene device with intent to promote it. The word "promote" is statutorily defined to mean "to manufac-

---

**5.** In saying that "obscene material and obscene devices are *used* for the same purpose," surely the majority does not mean to equate lustful thoughts with private sexual activity. If it does, some supporting authority would aid one in comprehending the equation.

ture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do same." "Obscene device" is statutorily defined to mean "a device, including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs." Sec. 43.21(a)(7), supra.

A "dildo" is not defined in the Penal Code. However, its common definition is that it is an inanimate object or device, designed in the form of an erect penis, which, in its manufactured state, can only be seen or touched. See *Hall v. State*, 661 S.W.2d 101 (Tex.Cr.App.1983) (Teague, J., Concurring Opinion). A dildo may be used to stimulate human genital organs, but it need not be so used.

There are no exceptions provided in the statute. *Any* person who, knowing its content and character, possesses with intent to "promote" a dildo is guilty of violating the statute. A physician, a psychiatrist, or a psychologist may be guilty of committing such crime. Whether the promotion of the object occurs in the privacy of one's bedroom or out in the general public makes no difference. A husband who provides his wife with a commercially available vibrator in the form of a dildo in the privacy of their bedroom may be just as guilty as a psychologist who provides the wife such in the privacy of his office.

In the trial court, appellant filed a motion to quash the information, asserting therein that V.T.C.A., Penal Code Sections 43.-21(a)(7) and 43.23(c)(1) were both unconstitutional, "under the due process ... [clause] of the Fourteenth Amendment to the Constitution of the United States and the equivalent provision of the Constitution of Texas." The motion was denied by the trial court. On appeal, appellant further argued that the statutes violated his right to privacy guaranteed under the Fourteenth Amendment to the Federal Constitution. He lastly argued that the statutes are an excessive use of the State's police power under the Texas Constitution.

The Fourteenth Court of Appeals, in a unanimous opinion by its Chief Justice, Hon. J. Curtiss Brown, affirmed, see *Yorko v. State*, 681 S.W.2d 633 (Tex.App.1984) and held that the above statutes are not unconstitutional under either the United States or Texas' Constitutions.

In rejecting appellant's assertion that the statutes are unconstitutional, the Court of Appeals started with the premise that a dildo is an "obscene device" and that one has no right of privacy to an obscene device. It held: "The United States Supreme Court has stated that there is no privacy right implicit in obscene displays in public places. *Paris Adult Theatre I v. Slaton*, 413 U.S. 2628, 2640 (1973). The right to privately possess obscene material [or an obscene device] is simply not at issue when such material is offered for sale to the public. *Goodwin v. State*, 514 S.W.2d 942, 944 (Tex.Cr.App.1974)."

In *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020 (5th Cir.1981), cert. denied 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982), the Fifth Circuit had occasion to address the validity of Sec. 43.21(a)(7), supra. That Court pointed out that the language of the Texas statute is patterned on the Georgia obscenity statute, Ga.Code Sec. 26–2101(c), and also pointed out that the Georgia Supreme Court, see *Sewell v. State*, 238 Ga. 495, 233 S.E.2d 187 (1977), had rejected the defendant's assertion that the statute was vague and overbroad and found no constitutional problem with Georgia's prohibition of the sale of such devices. The Fifth Circuit next pointed out that the United States Supreme Court had dismissed Sewell's appeal for want of a substantial federal question. *Sewell v. Georgia*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). It then concluded: "Thus, the constitutional propriety of the Texas counterpart to this Georgia obscenity provision is clear." (1028).

This Court's majority opinion in this cause correctly points out that we do not have a transcription of the statement of the facts, or a stipulation of evidence, before us. We do not even have the dildo that

appellant was convicted of possessing. Thus, in making the determination whether the above statutes are constitutionally valid, we are dealing with an extremely sparse record on appeal.

I find that the gist of what appellant asserts before us is that he claims that he has a constitutional right to privacy that authorizes him to sell dildos in public to those persons who desire them. Appellant, however, does not claim that what he wants to sell is protected by the First Amendment. This is easily understandable when one considers that there is no case authority that stands for the proposition that the sale of an object or device such as a dildo is protected by the First Amendment provisions of either the Federal or State Constitutions. E.g., *Hall v. State*, 661 S.W.2d 101 (Tex.Cr.App.1983) (Teague, J., Concurring Opinion).

Appellant claims, however, that prosecution for sale of a dildo "is nonsensical; that the State cannot articulate any reason, compelling or otherwise, why public sale of a dildo should be outlawed."

I believe what Justice Stewart stated in the dissenting opinion he filed in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), which case held that a Connecticut law which prohibited the distribution of contraceptive devices unconstitutionally intruded upon the right of marital privacy, is responsive to appellant's statement: "I think this is an uncommonly silly law. As a practical matter, the law is obviously unenforceable, except in the oblique context of the present case. As a philosophical matter, I believe the use of contraceptives in the relationship of marriage should be left to personal and private choice, based upon each individual's moral, ethical, and religious beliefs. As a matter of social policy, I think professional counsel about methods of birth control should be available to all, so that each individual's choice can be meaningfully made. But we are not asked in this case to say whether we think this law is unwise, or even asinine. We are asked to hold that it violates the United States Constitution." Except

for the fact that we are dealing with a sexual device, I adopt and approve all of what Justice Stewart has stated as far as it may be applied to this cause.

It is not now open to question that each State has the right, under its police power, to safeguard the health, comfort, safety, morals, and general welfare of its citizens by such laws as are reasonable and necessary for that purpose. *Lochner v. New York*, 198 U.S. 45, 53, 25 S.Ct. 539, 49 L.Ed. 937 (1905). The exercise of this power is a legitimate legislative function, and this Court does not sit as a superlegislative body to determine the desirability or propriety of statutes enacted by the Legislature. *Griswold v. Connecticut*, supra, 381 U.S., at 482, 85 S.Ct. at 1680.

If a law is legislatively enacted under the police power of the State to protect the health, comfort, safety, morals, and general welfare of its citizens, and such has a real, substantial relation to that object, the courts will not strike it down upon grounds merely of public policy or expediency. *Lombardo v. Dallas*, 124 Tex. 1, 73 S.W.2d 475 (1934).

Courts favor the constitutionality of statutes and the cardinal principle of statutory construction is to save, not to destroy. Our courts are obligated to uphold such laws and avoid doubts as to the constitutionality whenever possible. The courts should be reluctant to strike down a statute as unconstitutional unless and only when it is absolutely necessary on the facts or circumstances presented by the particular case. In the field of constitutional law, no stronger presumption exists than that which favors the validity of a statute. A legislative act must be sustained unless it is clearly invalid beyond a reasonable doubt. The strength of this presumption is nurtured by an appreciation of the needs of the people and by a recognition that laws are directed to problems manifested by experience. The courts will not exert ingenuity to find reasons for holding a statute invalid; rather, they will sustain its validity even if it is valid by the narrowest of margins. This is particularly true when

the statute pertains to governmental policies established in the interest of public health, safety, morals, and welfare, *Vernon v. San Antonio*, 406 S.W.2d 236 (Tex. Civ.App.—Corpus Christi 1966), and the statute does not involve proscribing that which is constitutionally protected.

Thus, where there is a challenge to the constitutionality of a statute, it is vested with a presumption of validity and this Court must construe it so as to uphold its constitutionality when possible. V.T.C.A., Penal Code, Section 1.05(b); Art. 5429b–2, Sec. 3.01(1), V.A.C.S.; *Ely v. State*, 582 S.W.2d 416 (Tex.Cr.App.1979).

I agree that the issue before us does not implicate the doctrine of vagueness, because the terms of the statute clearly put one on notice that which is proscribed. *Conally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

But, the doctrine of overbreadth, a legal concept parallel to the doctrine of vagueness, does not speak to the issue of notice and adequate standards, but, instead, speaks to the issue of whether the language of the statute is so broad that it criminalizes conduct protected under the Constitutions. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Dombrowski, et al. v. Eastland, et al.*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.E.2d 577 (1966).

Before *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.E.2d 419 (1973), which held that printed material was not protected by the First Amendment to the United States Constitution if the material, when viewed as a whole, appeals to the prurient interest in sex, and the material portrays "Sexual conduct in a patently offensive way, in which, taken as a whole [does] not have serious literary, artistic, political, or scientific value," was decided, this Court had stated the following: "The legislature [of Texas] has made certain activities in obscenity the subject of criminal liability, and, with the exception of private possession for personal use, *Stanley v. Georgia*, [1]

the federal constitution does not immunize those properly convicted from the sanctions imposed." *Bryers v. State*, 480 S.W.2d 712, 716 (Tex.Cr.App.1972).

In light of what the majority opinion states and holds, it is obvious to me that it fails to appreciate the importance that human sexual devices play in our present society, opting instead to put all human sexual devices under the umbrella labeled "obscene devices."

A "dildo," however, is not a human sexual device that is covered by a first amendment protected expression right, for the simple reason that it expresses nothing. See *Andrews v. State*, 652 S.W.2d 370 (Tex. Cr.App.1983); *Hall v. State*, supra; also see *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed.2d 1138 (1925).

However, the majority appears to hold that because this inanimate object has been declared by the Legislature to be an "obscene device" there is no way that one might have a constitutionally protected right to privacy in such an object.

An "Obscene device" is legislatively defined to be a device, including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs. Sec. 43.21(a)(7).

However, therein lies the problem. Nowhere does the statute prescribe any guidelines or standards by which one might make the factual determination whether what is called "a dildo" is an "obscene device." Facial overbreadth will not be invoked, however, when a limiting construction can be placed on the challenged statute. *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

It is not now open to debate that the above statutes include far reaching prohibitions that the State cannot legitimately control. *Red Bluff Drive-In, Inc. v. Vance*, supra. Also see the dissenting opinion that Judge Clinton has filed in this cause.

Appellant does not refer us to any legal authority, and my research has yet to re-

1. 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542   (1969).

veal any, that expressly states or holds that knowing possession of a dildo in public, however such object or device might be defined, with intent to sale, is either a Federal or State constitutionally protected right. Thus, this appears to be a case of first impression.

It is obvious that appellant's attack upon the statutes rests in his claim that they infringe upon his constitutional right to privacy, i.e., the constitutional right to privacy is without a zone of privacy which might otherwise surround a seller or giver of an object such as a dildo. E.g., *Goodwin v. State*, 514 S.W.2d 942 (Tex.Cr.App. 1974).

What is the real legal distinction between a seller or giver of rubbers or contraceptive devices and a seller or giver of dildos? The Supreme Court has seen fit to give the seller or giver of rubbers or contraceptive devices a constitutional right to privacy but has not yet seen fit to give the seller or giver of a human sexual device, such as a dildo, such a right. Should, however, in resolving this issue, it not be true that, as Judge Clinton points out in the dissenting opinion he has filed in this cause: "It is sufficient that there is a constitutional right to personal privacy broad enough to encompass a person's decision to engage in private consensual sexual activity in any manner or means not proscribed by law?"

In this regard, I am aware of the constitutional attacks that have been made against the Georgia statute, which is in all things like our own statute. See *Sewell v. State*, 238 Ga. 495, 233 S.E.2d 187 (1977), appeal dism'd sub nom. *Sewell v. Georgia*, supra; *Teal v. State*, 143 Ga.App. 47, 238 S.E.2d 128 (1977), appeal dism'd sub nom. *Teal v. Georgia*, 435 U.S. 989, 98 S.Ct. 1639, 56 L.Ed.2d 79 (1978); and *Simpson v. State*, 144 Ga.App. 657, 242 S.E.2d 265 (1978), appeal dism'd sub nom. *Simpson v. Georgia*, 439 U.S. 887, 99 S.Ct. 241, 58 L.Ed.2d 233 (1978). On each occasion, the United States Supreme Court has dismissed the appeal for want of a substantial federal question. In light of *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the dismissals by the Supreme Court may constitute adverse decisions on the merits of the Federal constitutional claim appellant attempts to assert in this cause. Nevertheless, a careful reading of what the members of the Supreme Court have said in the above cases easily leads one to conclude that they have not yet answered the question that is before this Court.

The majority opinion makes a valiant, but unsuccessful, effort to draw a distinction between the sale or receipt of a sexual behavioral device, such as a dildo, and the sale and use of contraceptive devices.

However, but because of what the Supreme Court stated and held in *Griswold v. Connecticut*, supra, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Carey v. Population Services International, et al.* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), its efforts are actually without merit.

I would hold that appellant had the constitutional right to sell or give away the dildo he was prosecuted and convicted for possessing. The above challenged statutes are overbroad because they reach a constitutionally protected right. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

If the State may not deny access to contraceptive devices, how can it deny access to human sexual devices that, as a matter of common knowledge, have much therapeutic value, and are harmless in themselves. We have come too far in the study of human sexual behavior of the human male and female since the day Kinsey, Pomeroy, and Martin wrote their work *Sexual Behavior in the Human Male* (1948), and their sequel, *Sexual Behavior in the Human Female* (1953), and have learned too much from the scientific research compiled by such persons as Kaplan, Caplan, Silvergalp, Lapichio, Green, Masters, Johnson, McCarthy, McCary, Ryan, Lee, Ellis, Pomeroy, and others to turn the clock back to more unenlightened times, and to approve the distinction the majority attempts

to draw. The majority's efforts should not be applauded.

It is common knowledge today that a person who has problems dealing with sexual behavior can suffer from depression and anxiety reaction, to such an extent that such a problem can cause an identity problem as far as self-image and self-confidence is concerned. It is also common knowledge today that trained experts in the field of human sexual behavior use sexual aids, such as a dildo, in their endeavors to cure their male and female patients' sexual problems. In fact, a Dr. William Simon of Houston, who is an eminently qualified expert in the field of human sexual behavior, has testified that it should be lawful for persons who are not licensed and certified psychologists to distribute, disseminate, give away, or lend such a sexual device as a dildo to others. As to harmful effects, Dr. Simon has testified that "Insofar as I can see no significant chance of harm or risk to the individual exists. This kind of self-prescribing doesn't strike me as being at all untoward and indeed may well serve many people who have neither the money nor the sophistication to seek more professional help." *Hall v. State*, supra, at p. 307 of the transcription of the statement of facts.

It is axiomatic that a regulation valid for one sort of enterprise, or in a given set of circumstances, may be invalid for another sort, or for the same enterprise under other circumstances, because the reasonableness of each regulation depends upon the relevant facts. *Nebbia v. New York*, 291 U.S. 502, 524, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

Under the State's police power, as long as the law is reasonable, as applied, and that the means selected have a real and substantial relation to the object sought to be attained, provided that it does not infringe upon or burden a constitutionally protected right, it will be upheld. "If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court functus officio ..." *Nebbia v. New York*, supra.

In this cause, it is not disputed that appellant was squarely on notice that his possession for sale of an unconstitutionally protected device or object, a dildo, was penally prohibited. Without more, the above principles of law would control the disposition that must be made of appellant's contention.

However, in this instance, appellant had the right to privacy in the dildo he possessed with intent to sell. Thus, such falls without the prohibited zone of the police power of the State. Cf. *Smith v. State*, 478 S.W.2d 518 (Tex.Cr.App.1972); *Deeds v. State*, 474 S.W.2d 718 (Tex.Cr.App.1971). In this instance, the statutes as applied to appellant's act of knowingly possessing in public what has been labeled by the Legislature an obscene device are overbroad, and violate a constitutionally protected right. Cf. *McMorris v. State*, 516 S.W.2d 927 (Tex.Cr.App.1974).

However, but as the Supreme Court pointed out in *Carey*, supra, such a business as manufacturing and selling such sexual devices as dildos may be regulated in ways that do not infringe protected individual choices. Notwithstanding this principle of law, regulations imposing a burden on such must be narrowly drawn to express only those interests, such as safeguarding health, maintaining medical standards, etc.

It should be obvious to anyone that from the little information that the Legislature had before it when it enacted the above statutes, governing the prohibition of knowing public possession, with intent to sell, of a dildo, it did not have before it sufficient evidence to justify what it did on the basis of the health, safety, morals, or general welfare of the public.

The statutes, encompassing dildos, are unconstitutional. For the above reasons, I must respectfully dissent to the majority opinion sustaining the statutes.

MILLER, Judge, dissenting.

Perhaps Mr. Justice Brennan has already said it all:

"Although there is a remote possibility that a given state court will be the first to discover a latent constitutional issue and to order redress if the issue is properly raised, it is far more likely that the court will fail to appreciate the claim and reject it out of hand."

Mr. Justice Brennan in *Reed v. Ross,* —— U.S. ——, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984).

I dissent.