729 So.2d 648 (1999)
STATE of Louisiana
v.
Mitchell E. SMITH
No. 97-KA-1393.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1999.
*649 Byrne W. Dyer, III, Gretna, Louisiana, for defendant/appellant, Mitchell E. Smith.
Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, of Orleans Parish, New Orleans, Louisiana, for the State of Louisiana/appellee.
MURRAY, Judge.
The appeal of Mitchell E. Smith, who was convicted of crime against nature, presents a question that has not been addressed directly by any Louisiana court: Whether La.Rev. Stat. 14:89 A(1), which criminalizes private, non-commercial sexual activity between consenting adults, violates the right to privacy expressly guaranteed by Article 1, § 5 of the Louisiana Constitution.

STATEMENT OF THE CASE
Mitchell Smith was charged with one count of aggravated crime against nature, and one count of simple rape of Yvonne Lauro. Mr. Smith pled not guilty to both charges and waived a jury trial. The matter was tried to the court on October 28, 1996, and taken under advisement. On November 8, 1996, the trial court rendered its verdict, finding Mr. Smith not guilty of simple rape and not guilty of aggravated crime against nature, but guilty of the responsive verdict of "simple" crime against nature. Mr. Smith's motion in arrest of judgment was denied, and he waived any sentencing delay. The court sentenced him to three years in the Department of Corrections, but suspended the sentence. It placed Mr. Smith on two years active probation, and ordered him to pay fines. This appeal followed.
On appeal Mr. Smith assigned four errors, all relating to the constitutionality of La.Rev. Stat. 14:89 A(1). Pursuant to La.Rev.Stat. 13:4448, this Court notified The Honorable Richard Ieyoub, Attorney General for the State of Louisiana, that the constitutionality of a statute had been challenged. The State was afforded an opportunity to file a brief with regard to that issue, but did not do so.

STATEMENT OF THE FACTS:
On September 25, 1995, Yvonne Lauro contacted Det. Joseph Goines of the New Orleans Police Department sex crimes unit, and alleged that she had been sexually assaulted on the previous day. Ms. Lauro took Det. Gaines to various locations where she had been with the man who allegedly assaulted her, whom she knew only as "Mitch." At Jack's Motel Det. Goines obtained a license plate number that enabled him to trace the car's registered owner, Mitchell E. Smith. The detective obtained a photograph of Mr. Smith and compiled a photographic line-up, from which Ms. Lauro identified Mr. Smith.
At trial it was established that Ms. Lauro and Mr. Smith each went to Brewski's Lounge in the Village Square Shopping Center in Chalmette on the afternoon of September 24, 1995. They were seated next to one another and began talking. They had at least one drink together before driving to Gabby's, a lounge in New Orleans East. From there they went to Jack's Motel on Chef Menteur Highway.
Ms. Lauro testified that she was "feeling badly," apparently from too much alcohol.[1] *650 She admitted that she agreed to go to the motel, but testified that she did so only because Mr. Smith assured her that he did not want to have "any kind of sexual relations." However, when they got to the room he began taking her clothes off, over her protests. Ms. Lauro testified that she cried and screamed rape, but was unable to move. Mr. Smith then performed oral and anal sex on her, forced her to have vaginal intercourse and to perform oral sex on him. Some time later he helped her dress. She felt sick and vomited on the floor. Mr. Smith helped her to his car, and drove her home.
Because she did not want to be lectured by her mother, Ms. Lauro went directly to her room after Mr. Smith dropped her off. She called her boyfriend's cousin and then her boyfriend. She did not contact the police until the next day when she called the St. Bernard Sheriff's Office and her cousin with the New Orleans Police Department. She testified that she did not want her boyfriend to be mad because she was drinking and about what she did, so she told him a "story that would sound better." Neither her boyfriend nor his cousin were sympathetic, so she called her ex-husband, who suggested that she take a bath to relax and calm down.
Ms. Lauro acknowledged that she had lied to the police when she told them that she had not agreed to go to the motel and thought Mr. Smith was taking her home. She testified that she told the police that because:
... that's what I had told my boyfriend that same night that I was raped because I was afraid that my boyfriend was going to lecture me and that he would break up with me, so that's what I told my boyfriend, and I also told my boyfriend's cousin so that they wouldn't have two separate stories. I didn't want my boyfriend to be mad at me. I wanted some comfort, I didn't want to be lectured.
Mr. Smith's version of events was consistent with Ms. Lauro's up to the point that the couple left Gabby's to go to Jack's Motel. He testified that he asked Ms. Lauro to go to the motel to "fool around," and she agreed. He also testified that they kissed in the car on the way to the motel, as they had on the way from Brewski's to Gabby's. When they arrived at the motel, they each undressed. They began kissing. Mr. Smith denied that Ms. Lauro yelled rape, and testified that she stopped him only to ask if he had a condom. When he told her that he did not, she told him that she did not think she could "go through with this." At that point, he testified that he pulled away. Ms. Lauro then performed oral sex on him. He denied having performed oral sex on her. He became aroused, and attempted to have intercourse with Ms. Lauro but stopped because "she just wasn't in the mood." He testified that he got a Coke for her so that she could take her epilepsy medication. She took the medicine, and then vomited on the floor. He helped her to clean herself. Ms. Lauro offered to pay for the room, and told him that she wanted to stay there, but he insisted on taking her home because he was concerned that she would have a seizure. She walked from the room to the car on her own. He stopped to buy a bottle of water for her on the way home. Ms. Lauro pointed out her house, and he dropped her off.
A maintenance man from the motel testified that Ms. Lauro and Mr. Smith were at the motel on September 24, 1995. They sat in their car while he finished cleaning their room. They then got out of the car and went into the room. He testified that Mr. Smith had his arm around Ms. Lauro, "walking her." Later he and another motel employee cleaned the room, which had vomit on the floor.
A waitress who was working at Gabby's on September 24, 1995, testified that she was the only waitress on duty that evening, and she waited on Mr. Smith and a lady. The couple stayed thirty minutes to an hour. She testified that the lady had only one drink while there, and did not appear intoxicated to her. When questioned by the court as to how she could remember the details of the day of the incident, she explained that she heard about Mr. Smith's arrest from her boss two days later.
An expert in pharmacy testified that the medications Ms. Lauro was taking, Tegretol and Tranxene, are used in the treatment of epilepsy. Tegretol should be taken with food as it can cause nausea and vomiting. Both *651 drugs can cause a little dizziness or drowsiness and alcohol can enhance the effect, although enhancement is less likely if the patient had been taking the medications for some time. This witness also testified that hallucinations have been documented as an adverse reaction to these drugs.
Based on this evidence the trial court found that Mr. Smith was not guilty of simple rape and not guilty of aggravated crime against nature. However, it found him guilty of the responsive verdict of "simple" crime against nature, stating that:
[T]he Court is going to find by virtue of testimony by both the victim and the Defendant (sic), that there was oral sex, which in Louisiana is still against the law. [Emphasis added.]

DISCUSSION:
Louisiana Revised Statute 14:89 A(1) provides that a crime against nature is:
The unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1 or 14:43. Emission is not necessary; and when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
Mr. Smith contends that La.Rev.Stat. 14:89 A(1) is unconstitutional because it is vague, overbroad, and violates the right to privacy. Even if the statute is constitutional as written, he contends that it was applied in a discriminatory fashion in this case because only he, and not Ms. Lauro, was prosecuted.

Vagueness:
The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that penal statutes describe unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. U.S. Const. Amend. XIV, § 1; Art. I, §§ 2, 13 of the 1974 Louisiana Constitution; Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); State v. Azar, 539 So.2d 1222 (La. 1989), cert. denied, Azar v. Louisiana, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48, (1989); State v. Powell, 515 So.2d 1085 (La. 1987); State v. Pierre, 500 So.2d 382 (La. 1987). A criminal statute is unconstitutionally vague if it does not give individuals adequate notice that certain conduct is proscribed and punishable by law, and if it does not provide adequate standards for those charged with determining the accused's guilt or innocence. State v. Union Tank Car Co., 439 So.2d 377 (La. 1983); State v. Dousay, 378 So.2d 414 (La. 1979).
Louisiana Revised Statute 14:89 has withstood repeated challenges for vagueness. See State v. Neal, 500 So.2d 374, 376 (La. 1987), relying on the summary of jurisprudence found in State v. Phillips, 365 So.2d 1304 (La. 1978):
The statutory terms defining the crime as "unnatural carnal copulation" involving the "use of the genital organ of one of the offenders" have acquired historically and jurisprudentially a definite meaning. As between human beings, it refers only to two specified sexual practices: sodomy (anal-genital intercourse of a specified nature,...) and oral-genital activity (whereby the mouth of one of the participants is joined with the sexual organ of the other participant.)
Neal, 500 So.2d at 376.

Overbreadth:
The statute also has withstood a constitutional challenge on the basis of overbreadth. As the Court noted in Neal, challenges for overbreadth generally are not appropriate "when the impermissible applications of the challenged statute affect conduct rather than speech. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)." Neal, 500 So.2d at 377.

Right to Privacy:
This appeal presents the first time that a Louisiana court has been asked to decide if La.Rev.Stat. 14:89 A(1), which criminalizes noncommercial sexual activity that *652 occurs in private, without force, between two people who are legally capable of consenting to that activity, violates the privacy clause of the Louisiana Constitution.
Article I, § 5 (the privacy clause) of the Louisiana Constitution of 1974 expressly guarantees that every individual shall be secure in his person against unreasonable invasions of privacy. This clause is an explicit expression of the priniciples recognized in the United States Supreme Court decisions on the right to privacy. It is well-settled that the explicit guarantee of the right to privacy contained in the Louisiana Constitution affords even more stringent protection of individual liberty than does the Fourth Amendment. State v. Perry, 610 So.2d 746, 756 (La. 1992).
Among the decisions that an individual may make without unjustified governmental interference are personal decisions relating to marriage, procreation, contraception, and family relationships.
Although La.Rev.Stat. 14:89 previously has been attacked as violating the right to privacy, no challenge has been based on the explicit guarantee of that right under the Louisiana Constitution in the context of noncommercial sexual activity between consenting adults.
In State v. McCoy, 337 So.2d 192 (La. 1976) the defendant attacked La.Rev.Stat. 14:89 as unconstitutional, inter alia, in light of the right to privacy recognized in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The Court rejected this argument, citing Doe v. Commonwealth's Attorney for the City of Richmond, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), (affirming a decision by a three-judge federal court that upheld a Virginia law punishing crimes against nature when committed by consenting persons). There was no apparent attack on La.Rev. Stat. 14:89 on state law grounds, and the McCoy court did not mention the Louisiana Constitution.
In Neal, 500 So.2d 374 (La. 1987), discussed previously, the Court, in summarily rejecting the allegation that La.Rev.Stat. 14:89 was overbroad, concluded that the crime against nature statute is "aimed at solicitations of sexual acts for compensation." Neal at 377. The Court also rejected Mr. Neal's request "for recognition of a right to privacy insulating all private sexual acts of consenting adults." In doing so, it stated:
The right to privacy does not shield all private sexual acts from state regulation, however. The United States Supreme Court in Bowers v. Hardwick, [478] U.S. [186], 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), rejected a claimed constitutional right to engage in private acts of sodomy. Moreover, as in the overbreadth argument, defendants overlook the fact that the private conduct which they seek to protect will not likely be affected by the enforcement of the statutes against indiscriminate solicitations of sexual acts for compensation, which generally occur in public. (Emphasis added).
Neal, 500 So.2d at 378-79.
In State v. Baxley, 93-2159 (La.2/28/94), 633 So.2d 142 (La. 1994), the Court stated:
On the facts presented, it is unnecessary to determine whether LSA-R.S. 14:89(A)(1) is unconstitutional and must be severed from the crime against nature statute. Baxley is charged with the conduct described by LSA-R.S. 14:89(A)(2), which prohibits soliciting compensated crime against nature. Although the parameters of the state constitutional right to privacy in the sexual area have not been determined, see Neal, 500 So.2d at 378 (privacy analysis under the federal constitution only), there is no protected privacy in public, commercial sexual conduct.
Mr. Smith has been convicted of a felony and sentenced to a term of imprisonment, albeit suspended, for engaging in a consensual sexual act between adults, not involving any money, that occurred in private. His appeal challenges the constitutionality of La. Rev.Stat. 14:89 A(1) in the context of private, noncommercial acts of sexual intimacy between consenting adults.
The State argues that "this is NOT a case of two consenting adults engaging in private behavior," suggesting that "this obviously was a `compromise' verdict." We disagree.
*653 The trial court did not find Ms. Lauro at all credible. It acquitted Mr. Smith on the simple rape and aggravated crime against nature charges. In doing so the court rejected Ms. Lauro's testimony that Mr. Smith forced her to have intercourse and perform acts of "unnatural copulation" or that she was so intoxicated that she was incapable of giving her consent. Apparently the court rejected all of Ms. Lauro's testimony about what occurred at Jack's Motel with the exception of that which was corroborated by Mr. Smith. The finding that "there was oral sex" was based on the fact that Mr. Smith and Ms. Lauro both testified there was. This finding was the sole basis of Mr. Smith's conviction.
There can be no doubt that the right of consenting adults to engage in private non-commercial sexual activity, free from governmental interference, is protected by the privacy clause of the Louisiana Constitution. La.Rev.Stat. 14:89 A(1) is state action that imposes a burden on this constitutionally protected right. In order to determine if this is a constitutionally permissible burden on the right to privacy, we must employ a standard of strict judicial scrutiny. Such an intrusion on an individual's constitutionally protected right to privacy is justified only by a compelling state interest. In addition, the state action must be no greater than that needed to further only that compelling interest. Perry, 610 So.2d at 760.
We have received no guidance from the State of Louisiana that will assist us in deciding the constitutionality of La.Rev.Stat. 14:89 A(1) in the context of this appeal. The Attorney General, although given notice and an opportunity to be heard, has not filed a brief. The brief filed on behalf of the State by the District Attorney, although arguing that there is no sound reason to deviate from the long history of jurisprudence upholding La. Rev.Stat. 14:89 A(1),[2] has advanced no compelling state interest to justify the criminalization of non-commercial sexual conduct that occurs without force, in private, between two consenting adults.
Several other states have considered this question in light of their state constitutions. From the opinions in' those cases we can discern the state interests that have been advanced to justify governmental interference in this most private activity. See Powell v. State, 270 Ga. 327, 510 S.E.2d 18, 1998 WL 804568 (11/23/98); Campbell v. Sundquist, 926 S.W.2d 250 (Tenn.App. 1996); Commonwealth v. Wasson, 842 S.W.2d 487 (Ky. 1992)[3]. It has been argued that a burden on the exercise of the right to privacy imposed by a state's prohibiting the sexual conduct covered by La.Rev.Stat. 14:89 A(1) is justified in order to: (1) discourage activities that would not lead to procreation; (2) discourage relationships that are short-lived, shallow and initiated for the purpose of sexual gratification; and, (3) further the social morality and the collective will of the state's citizens.
As did the Tennessee Supreme Court in Campbell, we find that discouraging acts that cannot lead to procreation is not a compelling state interest nor even a constitutionally valid justification for the state's invasion of the right to privacy. Campbell at 263, relying on Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
Because La.Rev.Stat. 14:89 A(1) criminalizes "unnatural copulation" within marriage and does not ban other forms of consensual activity outside marriage, it cannot possibly discourage short-lived, shallow relationships.
In considering the final justification offered for statutes such as La.Rev.Stat. 14:89 A(1), Chief Justice Benham of the Georgia Supreme Court stated:
...[T]he judiciary is charged with the task of examining a legislative enactment when it is alleged to impinge upon the freedoms and guarantees contained in the [State Constitution] and the U.S. Constitution, *654 and scrutinizing the law, the interests it promotes, and the means by which it seeks to achieve those interests, to ensure that the law meets constitutional standards. While many believe that acts of sodomy, even those involving consenting adults, are morally reprehensible, this repugnance alone does not create a compelling justification for state regulation of the activity.
Powell, 510 S.E.2d at 18.
The State has not suggested and this Court has not been able to discern a benefit to the State that would warrant the unduly oppressive invasion of an individual's constitutionally guaranteed right to privacy imposed by La.Rev.Stat. 14:89 A(1). We, therefore, conclude that La.Rev.Stat. 14:89 A(1) is an unconstitutional infringement upon the right to privacy to the extent it criminalizes the performance of private, consensual, non-commercial acts of sexual intimacy between individuals who are legally capable of giving their consent.[4]
Mitchell Smith was convicted of performing such an act; his conviction and sentence must be reversed.
REVERSED.
NOTES
[1] Ms. Lauro testified that she took medication for epilepsy; this medication caused her to become intoxicated more easily than when she was not taking it.
[2] As discussed earlier in this section, there is no history of La .Rev.Stat. 14:89 A(1) being upheld with regard to private, non-commercial sexual activity.
[3] Unlike the Louisiana Constitution, the constitutions of none of these states had an explicit guarantee of the right to privacy. Rather, these courts found that their state constitutions contain an implicit right to privacy that affords greater protection than does the Federal Constitution.
[4] Because we find La.Rev.Stat. 14:89 A(1) unconstitutional on its face we do not address Mr. Smith's final argument that it was applied in a discriminatory manner.