739 So.2d 368 (1999)
STATE of Louisiana
v.
Christine D. BRENAN.
No. 98 KA 2368.
Court of Appeal of Louisiana, First Circuit.
July 1, 1999.
Writ Granted September 24, 1999.
Walter P. Reed, District Attorney, Covington, Dorothy Pendergast, Metairie, for Appellee State of Louisiana.
Douglas A. Allen, Jefferson, for Defendant/ Appellant Christine D. Brenan.
*369 Before: CARTER, C.J., SHORTESS, and WHIPPLE, JJ.
CARTER, C.J.
The defendant, Christine D. Brenan, was charged by bill of information with two counts[1] of promotion of obscene devices, in violation of LSA-R.S. 14:106.1. She pled not guilty and filed a motion to quash the statute as unconstitutional. After a hearing, the trial court denied the motion to quash. After trial by jury, the defendant was found guilty as charged. For each conviction, she received a sentence of two years at hard labor and a $1,500 fine. The trial court ordered the fines and sentences to run concurrently, suspended them, and placed her on probation for five years.
The defendant has appealed, alleging eight assignments of error, as follows:
1. The trial court erred when it declined to find the statute unconstitutional on its face because said statute does not require the trier of fact to apply the rule of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).
2. The trial court erred when it refused to permit defense counsel to question prospective jurors about their views of contemporary community standards, prurient interests, patently offensive sexual conduct, or redeeming literary, artistic, political, scientific, or social value, and the privacy interests attendant thereto.
3. The trial court erred when it ruled that evidence required by Miller could not be presented to the jury for consideration because it was irrelevant.
4. The trial court erred when it refused to give an instruction to the jury requiring them to follow the rule in Miller, and by refusing to let counsel argue the Miller standards in opening and closing arguments.
5. The trial court erred when it declined to find the statute unconstitutional on its face and as applied because said statute is vague and overly broad.
6. The trial court erred when it permitted the State to introduce evidence which was not in violation of the statute but which was highly prejudicial and irrelevant.
7. The trial court erred when it declined to find the statute unconstitutional on its face and as applied because it violates the defendant's property rights.
8. The trial court erred when it declined to find the statute unconstitutional on its face and as applied because it violates the privacy rights of the defendant and her customers under Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and its progeny, and privacy rights as guaranteed by Article 1, § 5, of the Louisiana Constitution, and other rights retained by the people.

FACTS
On three separate occasions between January 1, 1996, and September 2, 1997, the defendant was arrested for selling obscene devices at her place of business, The Dance Box. The first two arrests occurred in July and October of 1996, when the defendant's business was located in a shopping center in Mandeville, Louisiana. On both occasions, the Mandeville Police seized items they believed to be obscene under the statute that were offered for sale in the store. These items were in a separate area of the store separated by latticework and labeled as being for adults only.
Sometime thereafter, the defendant lost her lease and moved the business to another *370 shopping center located just outside the Mandeville city limits. On September 2, 1997, the defendant was again arrested for selling obscene devices at the new location, this time by St. Tammany Parish Sheriffs deputies, and again items offered for sale in this store were seized.
At the trial, the Mandeville City Attorney and several law enforcement officers testified about items observed in, and seized from, the defendant's two stores and about her arrests for these violations of the statute. The State also introduced into evidence the numerous items purchased by undercover officers or seized from these stores in conjunction with the defendant's arrests.
The defendant described her business as a "family woman's oriented boutique" and explained that it sold adult and children's dancewear, costumes, tights, etc., as well as lingerie, sexual novelty items, and adult toys. She testified that her business did not sell pornographic videos or magazines, but she offered the adult items as an alternative to traveling into the French Quarter or Jefferson Parish "for women who were afraid to go into high risk areas, low rent areas that did not feel comfortable alone, though they wanted the product ...." The defendant testified that children were not allowed in the adult section of the store and that her employees had instructions to ask for identification to establish age. She indicated that she had difficulty understanding which devices were prohibited by the statute and which ones were not and that she had received many conflicting views on the subject.

ASSIGNMENTS OF ERROR NOS. SEVEN AND EIGHT:
In assignment of error number seven, the defendant contends that the trial court erred in denying the motion to quash on the basis that the statute violates her property rights. Specifically, noting that obscene devices can be owned, used, possessed, even purchased, she contends that a prohibition on the sale of these devices is an unreasonable restriction on selling one's property and/or engaging in business. In assignment of error number eight, the defendant contends that the trial court erred in denying the motion to quash on the basis that the statute unconstitutionally interferes with the right to privacy.
The defendant's contention that she should be free to sell her private property, which is otherwise not illegal to own or possess and is not classified as contraband, is derived mainly from LSA-Const. art. I, § 4, which provides in pertinent part:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
* * * * * *
Personal effects shall never be taken. But the following property may be forfeited and disposed of in a civil proceeding, as provided by law: contraband drugs; property derived in whole or in part from contraband drugs; property used in the distribution, transfer, sale, felony possession, manufacture, or transportation of contraband drugs; property furnished or intended to be furnished in exchange for contraband drugs; property used or intended to be used to facilitate any of the above conduct; or other property because the above described property has been rendered unavailable.
The defendant's contention that the statute constitutes an invasion of the right to privacy is based upon both federal constitutional law and the right to privacy guaranteed Louisiana citizens in LSA-Const. art. I, § 5, which provides:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or *371 affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
Individuals are protected from incursions by the State into certain areas of their lives by the Fourteenth Amendment of the United States Constitution, and a statute would be overbroad and, thus, constitutionally defective, if it extends State criminal authority beyond the proper reach of government into one of these protected areas. In order for the principle of overbreadth to apply, a constitutionally protected right must be abridged by the prosecution. State v. Griffin, 495 So.2d 1306, 1309-10 (La.1986).
Initially, we note that several other states have considered the constitutionality of similar statutes, with conflicting conclusions. Obscene devices statutes have withstood constitutional attacks under various grounds in Georgia (Sewell v. State of Georgia, 238 Ga. 495, 233 S.E.2d 187 (1977), appeal dismissed, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978)) and Texas (Regalado v. State of Texas, 872 S.W.2d 7 (Tex.App.), cert. denied, 513 U.S. 871, 115 S.Ct. 194, 130 L.Ed.2d 126 (1994); Yorko v. State of Texas, 690 S.W.2d 260 (Tex.Crim.App.1985)). In Yorko, the Texas Court of Criminal Appeals found their statute to be a legitimate exercise of state police power, justified under the rationale of protecting the societal interest in order and morality. 690 S.W.2d at 266.
On the other hand, the Supreme Courts of Kansas (State of Kansas v. Hughes, 246 Kan. 607, 792 P.2d 1023 (1990)), and Colorado (People ex rel. Tooley v. Seven Thirty-Five East Colfax, Inc., 697 P.2d 348 (Colo.1985)) have struck down their obscene devices statutes on constitutional grounds of overbreadth and violation of privacy rights.
Recently, in Williams v. Pryor, 41 F.Supp.2d 1257 (N.D.Al.1999), a federal district judge issued a permanent injunction against the enforcement of an obscene devices statute in Alabama after determining that it lacked a reasonable, rational relationship to a legitimate state interest and, therefore, violated the Fourteenth Amendment Due Process Clause. For the reasons which follow, we agree with the rationale of Williams v. Pryor and likewise find the instant statute lacks a reasonable, rational relationship to a legitimate state interest.
Police power is the power of a governmental body to regulate reasonably the actions of its individual citizens in order to protect or promote the public health, safety, morals, peace, or general welfare. The power of the federal government or of a state to pass laws regulating persons and property within its boundaries is an inherent power which stems from the theory that when persons choose to live in groups they must give up some individual freedom for the good of the group. However, the government does not have unlimited authority to regulate the lives of its citizens, but may pass only those laws which are reasonably related to protection or promotion of a public good such as health, safety, or welfare. A law which exceeds the bounds of reasonableness violates due process of law. City of Shreveport v. Curry, 357 So.2d 1078, 1081 (La. 1978).
In order to determine whether the instant statute falls within the State's police powers, or unreasonably exceeds them, we must attempt to determine the interests which the State seeks to advance through means of this statute. The Attorney General, although formally notified of this matter, has not filed a brief. The State's brief, filed by the special appeals counsel for the District Attorney's Office, refers vaguely in the following excerpt to a police powers argument, but does not attempt to define the interest(s) at stake: "Clearly the State has a right to regulate commerce *372 which includes the sale of goods. This statute represents this State's determination that it should regulate the promotion of these devices to meet a legitimate state interest." At oral argument, there was some mention of the protection of children and unconsenting adults, and public complaints apparently initiated the investigation which resulted in the defendant's arrests and prosecution in this matter. At trial, there was testimony that, while the obscene devices were located in a separate area of the defendant's stores and were separated by latticework, it was possible to look through this latticework and view some of the items. Accordingly, our analysis will proceed under the assumption that the primary purpose of this statute is to protect children and unconsenting adults.
To test the statute's reasonableness, we must determine whether there is a real and substantial relationship between the regulation imposed and the prevention of injury to the public or the promotion of the general welfare. City of Shreveport v. Curry, 357 So.2d at 1081. We find that some regulation of the sale of obscene devices is clearly within the scope of the State's police power. As the instant statute does not attempt to proscribe the ownership, possession, or use of obscene devices, we presume that the Legislature determined it would clearly be impossible to do so without bedroom police (and might, in fact, be unconstitutional). Instead, the instant statute addresses only the commerce in devices designed or marketed as useful primarily for genital stimulation by proscribing the sale, or promotion for sale, of such devices. Nevertheless, as applied to a commercial vendor such as the defendant, the owner of a retail establishment, we find that this statute unconstitutionally exceeds the limits of the State's legitimate interest and authority. An unconsenting adult is not going to purchase an obscene device. The harm to unconsenting adults is that they may unwittingly view these devices being offered for sale and be upset, shocked, or offended thereby. On the other hand, children should not be allowed to purchase obscene devices, and they also should be protected from public displays of these devices being offered for sale. The statute clearly accomplishes these goals; it simply forbids sale or promotion for sale of these devices. Yet, in doing so, it sweeps too broadly. These goals could easily be accomplished by far less restrictive means. Additionally, the manner of promoting or advertising these devices could be regulated to reduce, or perhaps even eliminate, the possibility of children and unconsenting adults accidentally viewing such devices and being upset, shocked, or offended thereby. If the State deemed it necessary, it might require licensing of dealers in obscene devices in order to further ensure compliance with proper guidelines: (1) in promotion or advertising of these devices; and (2) in verifying the ages of purchasers to prevent sales to minors. Such measures could accomplish the State's goals without a total ban on the sale or promotion for sale of these devices.
At this point, having determined that the statute is not a reasonable exercise of the State's police power and, therefore, violates the defendant's right to due process, we are compelled to point out other problems with the instant statute. While Subsection A attempts to limit the definitions of "obscene device" and "promote" to the proper "context," the statute does not qualify the manner of "stimulation" of the genital organs. The most obvious example would appear to be actual physical stimulation using a device such as a vibrator or dildo. However, the statute is arguably open to broader interpretations, and herein lies one problem. Pornographic pictures, books, magazines, and videos are obviously intended to produce in the reader/viewer feelings of arousal and sexual stimulation. Are these items to be covered within the scope of this statute? What about a very skimpy bikini, sexy nightgown, or even tight blue jeans? Are *373 lubricants such as K-Y Jelly to be included? Does the statute proscribe newer medical innovations such as penile implants or Viagra?[2] While these problems perhaps do not render the statute void for vagueness, they do present potential questions of overbroad applications.
Another awkward feature of the statute, as noted in the defendant's brief, deals with intent. If an obscene device is sold by the vendor and purchased by the buyer solely for use as a gag gift or joke, should the vendor be subjected to prosecution under this statute? It would appear that the intent element in Subsection B of the statute focuses upon the intent of the vendor, yet the language used to define an "obscene device" under Subsection A(1) seems to imply some consideration of the intent of the designer, manufacturer, or marketer of the device. What about the inverse situation dealing with, for example, vibrators which are not shaped like penises and are labeled as "personal massagers" or other clever names which might not, at first blush, conjure up notions of sexual applications. If such devices are being sold every day at stores such as Wal-Mart or K-Mart, to customers who intend to use them only for genital stimulation, is the instant statute reasonable and rational when it clearly has no bearing on these devices simply because they are designed, packaged, or marketed differently?
Accordingly, the trial court erred in denying the defendant's motion to quash on these bases. Since we have determined that the instant statute is unconstitutional, we must reverse the defendant's convictions and sentences and order her discharged. Because of our resolution of the above issues, defendant's remaining assignments of error are pretermitted. Therefore, for the above reasons, the defendant's convictions and sentences are reversed.
CONVICTIONS AND SENTENCES REVERSED.
CARTER, C.J., and WHIPPLE, J., Specially Concurring.
We reluctantly conclude that the convictions must be reversed herein. We personally find the items seized to be shameful, reprehensible and disgusting. Nevertheless, as judges of the First Circuit Court of Appeal, we took an oath "... that [we] will support the constitution and laws of the United States and the constitution and laws of this state and that [we] will faithfully and impartially discharge and perform all the duties incumbent on [us] ...." To be faithful to this oath and to faithfully and impartially discharge our duties, we are compelled to declare LSA-R.S. 14:106.1 unconstitutional and reverse these convictions and sentences.
Whether the Legislature can salvage any portion of this statute or redraft it in a form which could withstand future constitutional challenges is problematical. However, due to recent jurisprudential developments, and because similar issues may arise in the future, we include the following caveat. If a general concern for public morality was the State's sole or primary purpose in enacting this obscene devices *374 statute, such a purpose may run headlong into a right to privacy argument. Relying on Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct. 2258, 2267-68, 138 L.Ed.2d 772 (1997), wherein the United States Supreme Court enumerated eight fundamental rights, the Court in Williams v. Pryor declined to expand these eight fundamental rights to include a constitutional privacy right to obtain and use obscene devices. But even if this Court accepted such an analysis, we note that the right to privacy under the Louisiana Constitution (which gives greater protections than federal law) might well be applicable. Because the instant statute failed the lowest level of judicial scrutiny (the reasonable, rational relationship test), the majority opinion did not proceed with any further analysis. However, any attempt by the Legislature to enact a more limited statute by redrafting it in a form exceeding those goals noted in the majority opinion (protecting children and unconsenting adults) might well encounter the next constitutional hurdle, the right to privacy in Louisiana, which would trigger strict judicial scrutiny, a fatal analysis in the absence of a compelling state interest. See and compare State v. Perry, 610 So.2d 746, 760 (La.1992); State v. Gamberella, 633 So.2d 595, 604 (La.App. 1st Cir.1993), writ denied, 94-0200 (La.6/24/94); 640 So.2d 1341.
Furthermore, while the majority opinion noted that the Texas and Georgia statutes had withstood constitutional attacks, we now seriously doubt that Georgia's statute would withstand any new challenges in light of Powell v. State of Georgia, 270 Ga. 327, 510 S.E.2d 18 (1998), which reversed the conviction of a male defendant for violating a sodomy statute (based upon his admission of oral sex with a female). Therein, the Georgia Supreme Court concluded that the statute violated the right to privacy of consenting adults engaging in non-commercial acts of sexual intimacy in the privacy of the home. Moreover, in Louisiana, a crime against nature conviction (under LSA-R.S. 14:89 A(1)) was reversed in State v. Smith, 97-1393 (La.App. 4th Cir.2/9/99); 729 So.2d 648.[1] Therein, our brethren of the fourth circuit concluded that the statute violated the right to privacy under the Louisiana Constitution "to the extent it criminalizes the performance of private, consensual, non-commercial acts of sexual intimacy between individuals who are legally capable of giving their consent." 729 So.2d at 654. If Louisiana's right to privacy protects non-commercial, consensual oral sex between adults, it could be asserted that the Legislature would face great difficulty in proscribing, or even restricting, the sale of obscene devices intended for private use in the home by consenting adults.
However, as noted in the majority opinion, some regulation of the sale of obscene devices is clearly within the scope of the State's police power. A narrowly drawn statute designed to protect children and unconsenting adults by regulating the sale, promotion, advertising, and display of these devices, will certainly advance legitimate State interests and should withstand constitutional scrutiny.
For the above reasons, we respectfully concur in the majority opinion.
NOTES
[1] At the beginning of the motion to quash hearing, it appeared that the prosecutor intended to amend the bill of information to add a third count (apparently reflecting the defendant's third arrest). However, the bill of information reflects that the only amendment which took place was the addition of the date of September 2, 1997. The record clearly indicates that the defendant was tried and convicted on only two counts.
[2] There is also the possibility that the instant statute might conceivably be applied to unsuspecting medical practitioners, sex therapists, etc., or might increase the difficulty of their patients in legally obtaining such devices in Louisiana. The Alabama and Kansas cases clearly contained evidence regarding the potential impact of the respective statutes upon medical practitioners, sex therapists, etc., and their patients; the Colorado case discussed such issues although it is not entirely clear if such evidence was introduced. While it appears certain that the defendant had standing to assert constitutional challenges on behalf of these persons, no such evidence was introduced at the instant trial regarding the potential medical/therapeutic uses of vibrators, dildos, and other such devices. See Carey v. Population Services International, 431 U.S. 678, 683-84, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977) and Craig v. Boren, 429 U.S. 190, 194, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976). Therefore, this particularly troublesome issue presents fact situations raising considerations not before us herein.
[1] We note that crime against nature proscribes both oral sex and anal sex. The crime in Smith involved consensual oral sex between a man (defendant) and a woman. The defendant filed for a writ of certiorari with the Louisiana Supreme Court on March 4, 1999. On June 25, 1999, the Louisiana Supreme Court granted a writ of certiorari in State v. Smith, and docketed the case for review. See State v. Smith, 99-0606 (La.6/25/99), ___ So.2d ___, 1999 WL 511434.