APRIL 24, 1978

No. 76–1738. SEWELL *v.* GEORGIA. Appeal from Sup. Ct. Ga. dismissed for want of substantial federal question.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

Appellant, William M. Sewell, appeals from a judgment of the Supreme Court of Georgia which affirmed his conviction

on a one-count accusation framed under the Georgia obscenity statute, Ga. Code § 26–2101 (1975). In July 1975, a police officer bought a magazine, Hot and Sultry, and a device said to be an "artificial vagina," from appellant, an employee of the Stewart Avenue Adult Book Store. Shortly after this sale, the officer, joined by two others, entered the store, arrested appellant, and seized various vibrators, rubber devices shaped like penises, and other items alleged to be devices for sexual stimulation. After attempting unsuccessfully to have the seized material suppressed, appellant was convicted by a jury of selling the magazine and artificial vagina and of possessing the other material and was sentenced to 12 months in jail and a fine of $4,000.

Georgia Code § 26–2101 (a) (1975) provides:

"A person commits the offense of distributing obscene materials when he sells . . . or otherwise disseminates to any person any obscene material of any description, knowing the obscene nature thereof, or offers to do so, or possesses such material with the intent to do so, provided that the word 'knowing,' as used herein, shall be deemed to be either actual or constructive knowledge of the obscene contents of the subject matter, and a person has constructive knowledge of the obscene contents if he has knowledge of facts which would put a reasonable and prudent person on notice as to the suspect nature of the material."

Sections 26–2101 (b) through 26–2101 (d) define the term "obscene materials" used in § 26–2101 (a). Section 26–2101 (b) covers published material alleged to be obscene and generally tracks the guidelines set out in *Miller* v. *California,* 413 U. S. 15 (1973). Section 26–2101 (c) states that, in addition to material covered in subsection (b), "any device designed or marketed as useful primarily for the stimulation of human genital organs is obscene material under this section."

The jury was instructed that it should determine the obscen-

ity of Hot and Sultry under the standards set out in §§ 26–2101 (a) and 26–2101 (b) and that the sale of the artificial vagina and the possession of the other material should be considered under §§ 26–2101 (a) and 26–2101 (c). The trial judge further charged the jury on the meaning of "knowing" in the words set out in § 26–2101 (a). A general verdict of guilty was returned.

In this Court, appellant raises constitutional objections to a number of features of § 26–2101. First, he argues that an obscenity statute which defines scienter in a manner which authorizes obscenity convictions on mere "constructive" knowledge impermissibly chills the dissemination of materials protected under the First and Fourteenth Amendments. Jurisdictional Statement 3. Second, he argues that there is no rational basis for § 26–2101 (c) and, in addition, that it is unconstitutionally vague. Jurisdictional Statement 3, 9–10. Third, appellant contends that Hot and Sultry is not obscene as a matter of law. *Id.,* at 3. And, finally, appellant challenges the warrantless mass seizure of the sexual devices on First, Fourth, and Fourteenth Amendment grounds. *Id.,* at 3, 17.

This is an appeal and I cannot agree with the Court that the first and second questions presented can be dismissed as not presenting substantial federal questions.[1]

## I

In *Ballew* v. *Georgia, ante,* p. 223, we granted certiorari to consider, but did not reach, the precise scienter issue now raised by appellant. See Pet. for Cert. in *Ballew* v. *Georgia,* O. T. 1977, No. 76–761, p. 2. I see no basis for concluding that a federal constitutional question sufficiently substantial

---

[1] Although I agree with my Brother STEWART, *post,* at 988–989, that § 26–2101 is unconstitutional as applied to the magazine involved in this case, I recognize that a majority of this Court does not agree with this view and, accordingly, I would hear argument on the scienter issue.

to be granted review on certiorari is now so insubstantial as not to require exercise of our mandatory appellate jurisdiction in this case. Moreover, even if others do not agree that the void-for-vagueness issue is substantial, the fact that appellant might have been convicted for sale or possession of the seized devices is irrelevant to consideration of the obscenity issue. As we said in *Stromberg* v. *California,* 283 U. S. 359, 367–368 (1931):

> "The verdict against the appellant was a general one. It did not specify the ground upon which it rested. . . . [I]t is impossible to say under which clause of the statute the conviction was obtained. . . . It follows that instead of its being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld."

See also *Bachellar* v. *Maryland,* 397 U. S. 564 (1970).

## II

Appellant's second argument, that § 26–2101 (c) is void for vagueness, also raises a substantial federal question—one of first impression in this Court—even though appellant fundamentally misapprehends the reach of the First Amendment in his argument that the protections of that Amendment extend to the sexual *devices* involved in this case.[2] As we said in *Grayned* v. *City of Rockford,* 408 U. S. 104, 108–109 (1972):

> "It is a basic principle of due process that an enactment

---

[2] Even if devices might in some circumstances be protected by the First and Fourteenth Amendments, this is not the case here since no claim is made that the devices are in any way expressive or that their possession and sale is in any way related to appellant's right to speak.

is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Footnotes omitted.)

See also *Papachristou* v. *Jacksonville,* 405 U. S. 156 (1972); *Cline* v. *Frink Dairy Co.,* 274 U. S. 445 (1927); *Connally* v. *General Construction Co.,* 269 U. S. 385 (1926).

Section 26–2101 (c) at least arguably offends both principles enunciated in *Grayned.* Even conceding that a jury could properly infer from the shapes of the seized devices that some could be used for sexual stimulation, the fact that some people might use the devices for that purpose scarcely suffices to show that they are designed or marketed *primarily* for sexual stimulation. As one commentator has noted, statutes couched in such terms of "judgment and degree" contain seeds of "inherent discontrol" over the law enforcement process and have been "virtually [the] exclusive target of void-for-vagueness nullification." Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 92–93 (1960). Moreover, "it is in this realm, where the equilibrium between the individual's claims of freedom and society's demands upon him is left to be struck *ad hoc* on the basis of a subjective evaluation, . . . that there exists the risk of continuing irregu-

larity with which the vagueness cases have been concerned."
*Id.,* at 93.[3]

In addition, although vague statutes may be saved from
constitutional infirmity if they require specific intent as an
element of an offense, see *Papachristou* v. *Jacksonville, supra,*
at 163, the constructive scienter requirement of § 26–2101 (a),
at least as applied in appellant's trial, provides no reasonable
assurance that persons will know or ought to know when they
are likely to violate § 26–2101 (c).

The record here is very clear: Appellant was convicted solely
on the basis of the *guesses* and *assumptions* of the single wit-
ness at trial—a policeman who had never used the devices,
Tr. 24; never seen them used, *id.,* at 25; and who knew
of no one who used them for sexual stimulation, *id.,* at
26—that the seized devices were used primarily for the stim-
ulation of human genitals. See *id.,* at 22, 24. In explain-
ing how he had reached his guesses and assumptions notwith-
standing a total lack of personal familiarity with the seized
devices, that witness stated that he had seen, in the course of
his investigations, "newspapers that are printed and catalogs
that are sent out to different people pertaining to these
things." *Id.,* at 32. No catalogs were introduced into evi-
dence and no evidence was given to show that the unidentified

---

[3] Moreover, the facial vagueness of § 26–2101 (c) is enhanced by its
interpretation by law enforcement personnel. Although § 26–2101 (c) by
its terms applies only to devices that are "designed or marketed as useful
primarily for the stimulation of human genital organs," the accusation
against appellant nonetheless charged appellant with possession of "3 anal
stimulators." Clerk's Tr. 3. So far as I know, no dictionary includes the
human anus among the *genital* organs. See also *Balthazar* v. *Superior
Court,* 573 F. 2d 698 (CA1 1978). The packaging of another item states
quite clearly on the back that the item is a "doggy dong." Whether this
item, in the shape of a rubber candlestick, is to be used with dogs or
humans—or simply as a "novelty," for whatever ribald humor it may give
rise to—it is impossible to discover how appellant or a jury could conclude
that this item is *primarily* used for stimulation of *human* genitals.

catalogs would likely have been sent to appellant. Thus, how the proverbial "reasonable man," or even a "reasonable clerk in an adult book store," would have been put on notice of the *primary* use to which the seized devices would be put is simply not apparent.

It is therefore hard to imagine a more stark prima facie case of a "vague law [which] impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis." *Grayned* v. *City of Rockford, supra,* at 108–109. In a society where the rule of law is paramount, it simply will not do to allow persons, however ignoble their trade—or perhaps because their trade is ignoble, cf. *Papachristou* v. *City of Jacksonville, supra*—to be convicted of crimes solely because policemen and juries, encouraged by the State, can conjure up scenes of sexual stimulation in which devices play a major role.

For the reasons set out above, I would set this case for argument.

MR. JUSTICE STEWART, dissenting.

The appellant stands convicted of the single crime of distributing obscene material in violation of Ga. Code § 26–2101 (1975). Cf. *Robinson* v. *State,* 143 Ga. App. 37, 38–39, 237 S. E. 2d 436, 438 (1977), vacated and remanded on other grounds, *post,* p. 991. The one-count indictment charged that he had sold both sexual devices, alleged to be obscene material as defined in § 26–2101 (c), and a magazine, alleged to be obscene under the definition in § 26–2101 (b).

While the appellant does not claim that the definition of obscenity in subsection (b) is unconstitutional, he does ask this Court to examine the magazine in question and to determine that it is constitutionally protected as a matter of law. I continue to believe that "at least in the absence of distribution to juveniles or obtrusive exposure to unconsenting adults, the First and Fourteenth Amendments prohibit the State and

Federal Governments from attempting wholly to suppress sexually oriented materials on the basis of their allegedly 'obscene' contents." *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 113 (BRENNAN, J., dissenting). I therefore believe that the appellant's conviction cannot constitutionally rest on the sale of an allegedly obscene magazine.

Because it cannot be determined that the jury in this case did not convict the appellant on the basis of the magazine sale alone, I would reverse the judgment of the Supreme Court of Georgia.* See *Stromberg* v. *California,* 283 U. S. 359, 368.

---

*Like my Brother BRENNAN, *ante,* at 984 n. 1, I recognize that a majority of the Court does not share this view, and since I also agree with Part I of his dissenting opinion, I would alternatively note probable jurisdiction and hear argument in this case on the scienter issue, if three other Members of the Court were like-minded.