IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 1, 2008

Charles R. Fulbruge III
Clerk

_____

No. 06-51067

_____

RELIABLE CONSULTANTS INC, doing business as Dreamer's and Le Rouge
Boutique

Plaintiff - Appellant

PHE INC, doing business as Adam and Eve Inc

Intervenor - Plaintiff - Appellant

v.

RONNIE EARLE, in his official capacity only, Travis County District
Attorney

Defendant - Appellee

STATE OF TEXAS,

Intervenor - Defendant - Appellee

--------------------
Appeals from the United States District Court
for the Western District of Texas, Austin
--------------------

ON PETITION FOR REHEARING EN BANC

(Opinion February 12, 2008, 5 Cir., _____, _____ F.3d _____)

Before REAVLEY, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:

Treating the Petition for Rehearing En Banc as a Petition for Panel

Rehearing, the Petition for Panel Rehearing is DENIED. The court having been

polled at the request of one of the members of the court and a majority of the

judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

EDITH H. JONES, Chief Judge, together with JOLLY, SMITH, CLEMENT, and OWEN, Circuit Judges, dissenting from the denial of rehearing en banc:

Part I of Judge Emilio Garza's dissent, infra, explains well why the procedural and substantive flaws embodied in the Reliable panel opinion should have warranted en banc rehearing by this court. To summarize, Reliable extends Lawrence v. Texas, 539 U.S. 558, 123 S. Ct. 2472 (2003) without warrant;[1] conflicts with the decisions of other circuits; overrules sub silentio a prior controlling decision of this court; and ignores the obvious tension between its result and Supreme Court precedent upholding similar sexual device legislation. Far from being "compelled" by Lawrence to overturn the Texas sexual devices statute, the Reliable majority exploited the decision's broad and vague statements about liberty while ignoring the Court's self-imposed limits on its implications.

The Supreme Court alone will ultimately decide how far and on what basis Lawrence extends beyond the scope of conduct there given constitutional protection. It is not for lower courts, in our view, to leverage Lawrence into overriding all sorts of "morals" laws in defiance of the democratic processes that produced them. Lawrence did not disavow Chief Justice Rehnquist's admonition in Washington v. Glucksberg:

> But we "ha[ve] always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992). By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore "exercise the utmost care whenever we are asked to break new ground in this field," ibid., lest the liberty interest protected by the Due Process clause be subtly transformed into the policy preferences of the Members of this Court. Moore v. City of

---

[1] As Judge Evans has noted, to argue that Lawrence condones every type of sexual practice trivializes that decision and "demeans the importance of its holding which deals a fatal blow to criminal laws aimed at punishing homosexuals." Muth v. Frank, 412 F.3d 808, 819 (7th Cir. 2005) (Evans, J., concurring).

East Cleveland, 431 U.S. 494, 502, 97 S. Ct. 1932, 1937 (1977) (plurality opinion).

521 U.S. 702, 720, 117 S. Ct. 2258, 2267-68 (1997) (full citations supplied). Whatever the policy preferences of the Reliable majority may be, I respectfully doubt that the Members of the Supreme Court intended Lawrence to place "outside the arena of public debate and legislative action" Texas's prohibition (with exceptions) on selling sexual devices.

Because it is enough to differ with the majority's extension of Lawrence in this case, we need not adopt parts II and III of Judge Garza's dissent.

GARZA, J., dissenting from the denial of rehearing en banc:

The Fourteenth Amendment protects our highest aspirations as persons and as citizens of the United States:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV § 1 (emphasis added).

A panel of this Court relying on Lawrence v. Texas, 539 U.S. 558 (2003), has held effectively that the Fourteenth Amendment protects a "substantive due process right," Reliable Consultants, Inc. v. Earle, 517 F.3d 738, 744 (5th Cir. 2008), to promote a device "designed and marketed as useful primarily for stimulation of the human genital organs," TEX. PENAL CODE ANN. §§ 43.21-23 (Vernon 2003 & Supp. 2007). See Reliable, 517 F.3d at 747. Because of Lawrence, this Court declined to reconsider Reliable en banc. It is precisely because of the Lawrence opinion and the Reliable majority's unwarranted extension of Lawrence that I would grant rehearing en banc.

I

In Reliable, two retail distributors of sexual devices sought to increase their sales of and advertising for sexual devices in Texas. Faced with a Texas statute prohibiting the promotion of such devices,[1] these businesses sought a

---

[1] The Texas statute at issue provides, in relevant part:

> (a)  A person commits an offense if, knowing its content and character, he wholesale promotes or possesses with intent to wholesale promote any obscene material or obscene device. . . .
> (c)  A person commits an offense if, knowing its content and character, he: (1) promotes or possesses with intent to promote any obscene material or obscene device. . . .

TEX. PENAL CODE ANN. § 43.23(a), (c) (emphasis added). An "obscene device" is "a device including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs." Id. at § 43.21(a)(7). "Promote" means "to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate,

5

declaratory judgment to hold the statute unconstitutional and permanently enjoin its enforcement. See Reliable, 517 F.3d at 741-42. Based on their understanding of Lawrence, the Reliable majority held that the Texas statute "impermissibly burden[ed] the individual's substantive due process right to engage in private intimate conduct of his or her choosing." Id. at 744. Accordingly, the Reliable majority struck down the statute. In my view, the Reliable majority made two critical errors: they misunderstood the right announced in Lawrence, and they extended that right far beyond its limits.

In Lawrence, Houston police officers were dispatched to a private residence in response to a reported weapons disturbance. Upon entering, they observed the resident, one "Lawrence," engaging in a sexual act with another man; the officers arrested the two men who were later convicted of the crime of "deviate sexual intercourse, namely anal sex, with a member of the same sex (man)." Lawrence 539 U.S. at 562-63. At the time, Texas law provided: "A person commits an offense if he engages in deviate sexual intercourse with another individual of the same sex." TEX. PENAL CODE ANN. § 21.06(a) (2003).[2] The Lawrence Court framed the question presented as: "whether petitioners' criminal convictions for adult consensual sexual intimacy in the home violate their vital interests in liberty and privacy protected by the Due Process Clause of the Fourteenth Amendment." Lawrence, 539 U.S. at 564. The Court

---

disseminate, present, exhibit, or advertise, or to offer or agree to do the same." Id. at § 43.21(a)(5). "Wholesale promote" means "to manufacture, issue, sell, provide, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, or to offer or agree to do the same for purpose of resale." Id. at § 43.21(a)(6).

[2] The Texas statute at issue in Lawrence defined "deviate sexual intercourse" as:

> (A) any contact between any part of the genitals of one person and the mouth or anus of another person; or
> (B) the penetration of the genitals or the anus of another person with an object.

TEX. PENAL CODE ANN. § 21.01(1) (2003).

6

answered this question in the affirmative.[3]

It is beyond dispute that the Supreme Court decided Lawrence as a substantive due process case. Analyzing a case under substantive due process, a court will apply one of two levels of scrutiny. If the challenged law infringes upon a fundamental right, a court applies strict scrutiny. See Reno v. Flores, 507 U.S. 292, 301-02 (1993). If the challenged law infringes some other non-fundamental liberty interest, a court applies rational basis review. See Meyer v. Nebraska, 262 U.S. 390, 399-400 (1923). The Court in Lawrence did not announce a fundamental right that would have triggered a strict scrutiny analysis but rather recognized only a narrow liberty interest protecting "two adults who, with full and mutual consent from each other, engage[] in sexual practices," 539 U.S. at 578, "in the confines of their homes," id. at 567.[4] Accordingly, the Lawrence Court tested the constitutionality of the challenged statute under rational basis review, holding that the "Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." Id. at 578

Although the Reliable majority seemed to acknowledge that Lawrence did not recognize a fundamental right, they failed to acknowledge that Lawrence recognized only a narrow liberty interest worthy of rational basis review. Instead, the majority recast the right announced in Lawrence as something outside of substantive due process jurisprudence entirely:

> The Supreme Court did not address the classification nor do we
> need to do so, because the Court expressly held that "individual

---

[3] The Court framed a related question: whether Bowers v. Hardwick, 478 U.S. 186, 190, 196 (1986) should be overruled. Although the Court overruled Bowers, see id. at 578, it did not disturb its fundamental holding, see id. at 590 & n.2 (Scalia J., dissenting) (citations omitted).

[4] The Court specifically disavowed Equal Protection analysis even though the petitioners advanced it as an alternative (and narrower) basis for invalidating the statute. Justice O'Connor would have invalidated the Texas statute under the Equal Protection Clause. Lawrence, 539 U.S. at 579-85 (O'Connor, J., concurring in the judgment).

7

decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. Moreover, this protection extends to intimate choices by the unmarried as well as married persons."

Reliable, 517 F.3d at 744-45 (quoting Lawrence, 539 U.S. at 578). The Reliable majority thus avoided determining what level of scrutiny to apply to the statute. Id. at 749 (Barksdale, J., dissenting). Although from that point forward the majority applied some form of rationality review, their opinion proceeded largely untethered from precedent and in conflict with at least two of our sister Circuits. See Seegmiller v. Laverkin City, 528 F.3d 762, 771-72 (10th Cir. 2008) (sustaining executive action under rational basis review in light of Lawrence); Williams v. Attorney General of Alabama, 378 F.3d 1232, 1236 (11th Cir. 2004) (noting "the Lawrence opinion . . . ultimately applied rational basis review, rather than strict scrutiny, to the challenged statute") (citing Lofton v. Sec. Dept. of Children and Family Servs., 358 F.3d 804, 816-17 (11th Cir. 2004)).

My disagreement with the Reliable majority is fundamental: having misunderstood the personal liberty interest announced in Lawrence, they created a commercial right ex nihilo to promote sexual devices. The Lawrence Court announced a narrow liberty interest protecting "two adults who, with full and mutual consent from each other, engage[] in sexual practices," 539 U.S. at 578, "in the confines of their homes," id. at 567. Nothing more. Indeed, despite some broad rhetoric, the Lawrence Court refrained from announcing a fundamental right under substantive due process analysis and stressed the limited scope of the case before it:

> The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two adults who, with full and mutual consent from each other, engaged

8

in sexual practices common to a homosexual lifestyle.

Lawrence, 539 U.S. at 578. The Reliable majority improperly broadened the scope of this narrow personal liberty interest to encompass commercial activity.

The liberty interest announced in Lawrence protects only adult, consensual, private conduct. The statute in Reliable does not prohibit sexual conduct, private or otherwise. Nor does it impermissibly burden any personal right. It prohibits only commercial conduct, e.g. manufacturing, selling, or advertising sexual devices, including dildos and artificial vaginas, which the people of Texas, acting through their elected representatives, have deemed to be particularly immoral, offensive, or otherwise warranting commercial prohibition. See Reliable, 517 F.3d at 741; compare Griswold v. Connecticut, 381 U.S. 479, 485 (1965) (striking statute that forbade "the use of contraceptives rather than regulating their manufacture or sale"). Moreover, the statute prohibits only commercial acts in the State of Texas. Texans face no punishment should they choose to possess or use such devices. Nor do they face punishment for purchasing such devices in another State and bringing them into Texas for their private use. See id. Indeed, if Texas had wanted to proscribe private conduct, such as that shielded from State regulation under Lawrence, it could have done so by extending the challenged statute to prohibit the possession or use of such devices at home. Texas did not. Notwithstanding the challenged statute, Texans remain free to use whatever devices they wish to augment their private, adult, consensual sexual activity. Accordingly, the Texas statute does not infringe any personal liberty interest, announced in Lawrence or otherwise.[5] See

_____

[5] In extending Lawrence to invalidate Texas's sexual devices statute, the Reliable majority ignored the rule that one panel of this Court may not overrule a prior panel decision. The majority overruled sub silentio Red Bluff Drive-In, Inc. v. Vance, 648 F.2d 1020 (5th Cir. 1981), a decision that upheld the same statute the Reliable majority struck down. Although the majority might contend that Lawrence "compelled" their contrary decision, the preceding discussion shows that is plainly wrong. The majority also has overlooked cases rebuffing objections to obscenity prosecutions, which contended that Lawrence protects such conduct among consenting adults. See United States v. Coil, 442 F.3d 912, 915 (5th Cir. 2006); United

Lawrence, 539 U.S. at 578.

In construing the personal liberty interest announced in Lawrence to encompass commercial activity, the Reliable majority also split with an opinion of the Eleventh Circuit in a case strikingly similar to Reliable. See Williams, 378 F.3d at 1250. In Williams, the ACLU, on behalf of various individual users and vendors of sexual devices, filed a lawsuit seeking to enjoin an Alabama statute, which, like the challenged Texas statute here, prohibited the commercial distribution of such devices.[6] Williams, 378 F.3d at 1233. The Williams Court began its analysis by observing that the Supreme Court never has recognized a broadly-defined fundamental right to "privacy" or to "personal autonomy." Id. at 1235 (citing Washington v. Glucksberg, 521 U.S. 702, 725 (1997)). Nor, according to Williams, has the Supreme Court ever recognized a "free standing 'right to sexual privacy.'" Id. Indeed, Williams observed that the Supreme Court has at least twice declined to recognize a fundamental right to sexual privacy, choosing instead to define narrower liberty interests, specific to the cases at hand. See id. at 1235-36 (citing Carey v. Population Servs. Int'l, 431 U.S. 678, 688 n.5 (1977); Lawrence v. Texas, 539 U.S. 558 (2003)). Finding no

States v. Extreme Assocs., Inc., 431 F.3d 150, 155-61 (3d Cir. 2005). These cases took seriously, as the Reliable majority did not, the Court's admonition: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Rodriguez de Quijas v. Shearson/American Exp., Inc., 490 U.S. 477, 484 (1989). Red Bluff stands in a direct line of cases permitting obscenity regulation. See, e.g., Sewell v. Georgia, 435 U.S. 982 (1978) (dismissing challenge to sexual devices statute for want of a substantial federal question). It is not for this Court to say that Lawrence undercuts the Supreme Court's obscenity jurisprudence.

[6] The challenged Alabama statute contains much of the same language as the Texas statute challenged in Reliable. It provides:

It shall be unlawful for any person to knowingly distribute, possess with intent to distribute, or offer or agree to distribute any obscene material or any device designed or marketed as useful primarily for the stimulation of human genital organs for any thing of pecuniary value.

ALA. CODE 13A-12-200.2(a)(1) (Supp. 2003) (emphasis added).

fundamental right, the Williams Court concluded that the narrow right announced in Lawrence did not extend to protect "the commercial distribution of sex toys," Williams, 378 F.3d at 1250, and thereby left untouched its pre-Lawrence decision, which, applying rational basis review, held that the Alabama statute did not violate the Fourteenth Amendment, Williams v. Pryor, 240 F.3d 944, 952 (11th Cir. 2001). The Reliable majority's point of departure from Williams is their failure to recognize that the liberty interest announced in Lawrence is a narrow, personal one that does not extend to commercial activity. Notwithstanding the circuit-split that their opinion created, the Reliable majority made no effort to explain why, in their view, the Eleventh Circuit erred.

II

This analysis would be incomplete if I did not discuss two concerns with Lawrence, as they relate to the Reliable majority's opinion. First, although Lawrence was decided as a substantive due process case, the Court did not employ the two-step analytical process it laid out in Glucksberg, 521 U.S. at 720-21, for determining the scope and the importance of the liberty interest at issue. Under Glucksberg, a court begins a substantive due process analysis with "a 'careful description' of the asserted fundamental liberty interest," 521 U.S. at 721 (citations omitted), and then asks whether the interest is "objectively, 'deeply rooted in this Nation's history and tradition,'" id. at 720-21 (citing Moore v. East Cleveland, 431 U.S. 494, 503 (1977) (plurality opinion)).[7] The Court's failure to employ this two-step analysis in Lawrence has created much confusion in interpreting the right announced in Lawrence, as evidenced by the Reliable majority's analysis. Second, the Lawrence Court reached the conclusion that a State cannot prohibit certain forms of sexual conduct based upon the moral judgment of its people. To the extent that Lawrence conducted a substantive due process analysis, it found, at most, a narrow liberty interest, and then proceeded

---

[7] Lawrence dismisses history and tradition as only a starting point. See infra note 12.

to strike down the challenged statute under rational basis review, holding that "[t]he Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." Lawrence, 539 U.S. at 578. Texas asserted only one state interest in support of its anti-sodomy statute: that it reflected the moral judgment of the legislature and thus the people. The Lawrence Court, however, concluded that the people's moral judgment was an illegitimate basis for or otherwise insufficient to sustain the law. See Reliable, 517 F.3d at 745. But this holding is in tension with precedents sustaining state legislation based on the people's moral choices.

To establish a system of criminal laws, the legislature must make certain moral choices, defining what behavior is right and what behavior is wrong. Absent a constitutional prohibition, those decisions may and should express the moral judgment of the majority. See Barnes v. Glen Theatre, Inc., 501 U.S. 560, 569 (1991) ("The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such as a basis for legislation.") (emphasis added) (citation omitted). Sexual behavior does not fall outside this principle simply because it is intimate and private in nature. The Lawrence majority admits as much: "Beginning in colonial times there were prohibitions on sodomy," a sexual act, "derived from the English criminal laws passed in the first instance by the Reformation Parliament of 1533."[8] Lawrence, 539 U.S. at 568. By striking down the Texas statute, the Lawrence Court disregarded this principle, just as the Court did in Romer when it held that moral disapproval of homosexual conduct, as expressed by the people through their elected representatives, was insufficient to sustain legislation prohibiting such conduct. See Romer v. Evans, 517 U.S. 620, 632-36 (1996)

---

[8] The codification of moral choices with respect to sexual acts is not limited to colonial times. Today, state criminal laws prohibit sex-based offenses such as prostitution, polygamy, incest, and bestiality, to name a few. The Lawrence Court did not explain why prohibiting these sexual acts advances a legitimate state interest whereas prohibiting homosexual sodomy does not.

(striking Colorado law prohibiting special treatment of homosexuals under Equal Protection Clause as not rationally related to a legitimate state interest). The Court ignores that by creating morality-based, non-textual rights it does nothing more than substitute its own moral compass for that of the People. The Reliable majority does the same. Based on the Court's own precedent, it would seem that the people of Texas have a legitimate interest in prohibiting sexual behavior they find to be immoral and therefore unacceptable. See Lawrence, 539 U.S. at 599 (Scalia J., dissenting).

III

These concerns go to the very core of substantive due process jurisprudence under the Fourteenth Amendment and to the scope of the Court's constitutional authority. Lawrence is the latest in a line of cases through which the Court has constitutionalized certain unenumerated "rights" and "liberty interests," without clearly articulating its constitutional authority to do so.[9] According to Lawrence, its holding is solely a creature of precedent. See Lawrence, 539 U.S. at 564-66, 573-74, 578-79 (citing Griswold v. Connecticut, 381 U.S. 479 (1965); Roe v. Wade, 410 U.S. 113 (1973); Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833 (1992)). These substantive due process precedents are troubling for two reasons.

First, through these precedents, the Court steadily has increased its own constitutional authority and in doing so has eroded the constitutional authority of the People to enact (and sustain) state legislation, see U.S. CONST. amend. X,

---

[9] My concerns relate solely to those unenumerated rights that the Court has created through its substantive due process jurisprudence)) "adjudication where the Justices will only approve laws where they believe that the end of the law, based on their personal values, justifies an intrusion on individual liberty." 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 15.4, 789 (4th ed. 2008). They do not include those substantive due process rights recognized in the Bill of Rights and incorporated to the States. See ROTUNDA, supra, at § 15.6. Nor do I discuss cases decided under the Equal Protection Clause, the Privileges and Immunities Clause, or procedural Due Process because those cases are rooted in the text and the original purposes of the Fourteenth Amendment. See ROTUNDA, supra, at §§ 14-15, 17-18.

and to amend the Constitution, see U.S. CONST. art. V. Early in our history, the Court acknowledged that the People's constitutional authority is paramount:

> That the people have an original right to establish, for their future government, such principles as, in their opinion, shall most conduce to their happiness, is the basis on which the whole American fabric has been erected.

Marbury v. Madison, 5 U.S. 137 (1 Cranch 137), 176 (1803) (emphasis added). Only recently has the Court gradually increased its own authority from Griswold,[10] to Casey,[11] to Lawrence,[12] at the expense of the People's authority. And although the Court sought to cabin its authority in Glucksberg:

> But we "ha[ve] always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights Texas, 503 U.S. 115, 125 (1992). By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore "exercise the utmost care whenever we are asked to break new ground in this field," ibid., lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court. Moore v. City of East Cleveland, 431 U.S. 494, 502 (1977) (plurality opinion).

---

[10] "Without those peripheral rights, the specific rights [set forth in the Bill of Rights] would be less secure. . . . [This observation] suggest[s] that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance. . . . The present case, then, concerns a relationship lying within the zone of privacy created by several constitutional guarantees." Griswold, 381 U.S. at 484-85.

[11] "Due process has not been reduced to any formula; its content cannot be determined by reference to any code. . . . [It is this outlook which has led the Court continually to perceive distinctions in the imperative character of Constitutional provisions, since that character must be discerned from a particular provision's larger context. And inasmuch as this context is not one of words but of history and purposes,] the full scope of the liberty guaranteed by the Due Process clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution." Casey, 505 U.S. at 848-49 (quoting Poe v. Ullman, 367 U.S. 497, 542-43 (1961) (Harlan, J., dissenting)) (Casey omitted bracketed portion of Poe).

[12] "History and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry." Lawrence, 539 U.S. at 572 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 587 (1998) (Kennedy, J., concurring)).

521 U.S. at 720, that decision still assumes that the Court has the authority to look outside the written Constitution to establish unenumerated substantive due process rights, see id.[13] Accepting this premise is to accept as constitutionally-legitimate a constitutionally-enigmatic jurisprudence without constitutional limits. Reliable is a perfect illustration.[14]

The second reason I find these precedents troubling is that the Court, when it departs from the Constitution's text, tends to vacillate in identifying the constitutional and theoretical underpinnings of the rights it creates, when the Constitution's text and the principles underlying it should be steadfast. The Court's abortion precedents illustrate this tendency well. In Roe, the Court held that the right to privacy encompasses a woman's right to have an abortion. See Roe, 410 U.S. at 152-54. But in Casey, the Court retreated from this holding when a fractured Court, in a joint opinion, upheld Roe's "central holding" but refused to defend Roe as resting on a sound interpretation of the Constitution. Through this back-and-forth, pick-and-choose, what-will-work substantive due process jurisprudence, the problems that inhere in a judicial philosophy that proceeds untethered from the text of the Constitution become apparent: it is far more akin to political debate than it is to the limited role of the judiciary in interpreting the law.

The issue before us is not the choice but rather who chooses. When the

---

[13] Although I do not agree that the Court has the authority to look outside the written Constitution to create constitutionally-protected rights, I do agree with Glucksberg's description of the risks and dangers inherent in this type of jurisprudence and the cautions the Court must employ if it continues down this path.

[14] Some may contend that self-restraint and reasoned judgment are adequate limitations on the Court's exercise of its substantive due process powers. See Casey, 505 U.S. at 849 ("The inescapable fact is that adjudication of substantive due process claims may call upon the Court in interpreting the Constitution to exercise that same capacity which by tradition courts always have exercised: reasoned judgment. Its boundaries are not susceptible of expression as a simple rule."). The Constitution says otherwise: its limitations are based not on self-restraint or reasoned judgment but rather on a clearly written demarcation of constitutional powers among the three branches, the checks and balances that lie therein, principles of federalism, and the People's right to "establish this Constitution."

judiciary ventures into the legislative realm, as the Court did in Lawrence and as the Reliable majority has done here, codifying its members' policy preferences and moral judgments as judicially-created rules of constitutional law, the courts forget that "the people, not the courts, established the Constitution; it is a document of self-determination, not judicial interpretation." Causeway Med. Suite v. Ieyoub, 109 F.3d 1096, 1115 (5th Cir. 1997) (Garza, J., specially concurring). When it ventures into the legislative realm, the Court exceeds its constitutionally-appointed role. See Armour Packing Co. v. United States, 209 U.S. 56, 82 (1908) ("It is the province of the judiciary to enforce the laws constitutionally enacted, not to make them to suit their own views of propriety or justice."). And the Court instills confusion and doubt in their lower courts and in the People.

The courts are the guardians of liberty. We must not forget, however, that the liberty we safeguard belongs not to us but to the People. By using the Fourteenth Amendment as a vehicle for creating unenumerated substantive due process rights, the Court abrogates the People's right to establish the contours of their basic liberties and arrogates that power to itself. The Reliable majority has followed suit. Lawrence is neither the beginning nor the end of this drama. Nor is Reliable. I fear that the end in this area of the law will be a separate unwritten constitution, established solely by the judiciary. The assumption of such vast authority by the courts denies the People's constitutional authority to make the moral and ontologically-sensitive decisions upon which substantive due process rights should be founded. See U.S. CONST. arts. I, V, & amend. X. Reliable takes us one step closer to that unfortunate denouement. I dissent.

JENNIFER W. ELROD, Circuit Judge, dissenting from the denial of rehearing en banc:

For two reasons, I agree with Chief Judge Jones and Judge Garza that the Reliable opinion merited the court's reconsideration en banc. First, the opinion was not compelled by Lawrence v. Texas, 539 U.S. 558 (2003), yet overruled sub silentio this court's prior controlling precedent, Red Bluff Drive-In, Inc. v. Vance, a decision that held constitutional the same statute at issue in this case. 648 F.2d 1020, 1026–28 (5th Cir. 1981). Consequently, the opinion runs afoul of our rule that "one panel of this court cannot overrule the decision of another panel; such panel decisions may be overruled only by a subsequent decision of the Supreme Court or by the Fifth Circuit sitting en banc." Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). Second, the opinion creates a circuit split. See Williams v. Att'y Gen. of Ala., 378 F.3d 1232, 1236–38, 1250 (11th Cir. 2004) (affirming constitutionality of Alabama sexual devices statute because Lawrence did not reach "the commercial distribution of sex toys"). I respectfully dissent.